GEORGE E. TANKARD v. ROANOKE RAILROAD AND LUM-
BER COMPANY.

*Action for Damages—Accident at Railroad Crossing—
Negligence—Contributory Negligence—Judge's Charge—
Evidence.*

1. While it is the duty of one crossing a railroad, in a vehicle, to
exercise ordinary care for the safety of the animal he is
driving, he has the right to assume that the railroad company
has discharged its duty to the public by keeping the crossing
in safe condition.

2. Where one drove up to a crossing and saw that the space between
the end of a railroad car and the end of the plank crossing
was wide enough to allow his vehicle to pass, he was not cul-
pable in attempting to cross without delay unless there was
reason to apprehend danger from an approaching car or
unless he had warning of a defect in the crossing and disre-
garded it.

3. In the trial of an action for damages for injury to plaintiff's
mule at a railroad crossing, it appeared that before plain-
tiff's servant attempted to drive over a crossing partially
obstructed by defendant's car but leaving eight feet of high-
way, the defendant's servant told him to wait a minute and
the train would move on, and his son and companion said to
his father "you had better not drive on, the mule is scary;"
plaintiff's servant struck the mule saying "there is room
enough," and as he was crossing the mule became frightened
and shying from the car stepped into a hole between the
tracks but within the limits of the highway, and was injured.
*Held*, that in no aspect of the testimony did the defendant
have a right to demand the submission to the jury of the
question of contributory negligence. (*Quere*, whether it was
not negligence on the part of the defendant to fail to warn
the driver against the defective plank and whether that
omission of duty would not have been deemed the proximate
cause of the injury even if the driver had been guilty of
antecedent contributory negligence).

4. Where testimony is admitted for a purpose for which it is compe-
tent but which, without explanation, might mislead the jury
upon another aspect of the case, a caution from the judge in
his charge that it is to be considered only in the view in
which it was admitted removes all ground for exception.

5. Where, in the trial of an action for damages resulting from a defective crossing, the question of defendant's negligence depended upon the finding as to the defects in the highway, it was competent to elicit from a witness a description of the exact condition of the crossing.

6. It was competent for a witness in the trial of an action for damages for an injury resulting from a defective crossing, to use a diagram of the crossing which he testified was a correct representation of it, the purpose being to illustrate his testimony as to the relative position of objects and their distances from each other.

ACTION for damages, for an injury to plaintiff's mule caused by a defective railroad crossing, tried before *Boykin, J.*, at Spring Term, 1895, of BEAUFORT Superior Court. There was judgment for the plaintiff and defendant appealed. The facts sufficiently appear in the opinion of Associate Justice AVERY.

*Mr. Charles F. Warren*, for plaintiff.
*Mr. John H. Small*, for defendant (appellant).

AVERY, J.:   It was conceded by counsel on the argument, and appeared also from the undisputed testimony, that the defendant's car partially obstructed the crossing but left about 8 feet of the highway covered by plank unoccupied, and that there was ample room for plaintiff's servant to cross with his mule and cart. The defendant's counsel contended that the hole in which the animal's leg was caught constituted no part of the highway, which it was the duty of the defendant to keep in safe condition. In passing upon the first issue which involved the question whether the injury was caused by the negligence of the defendant, the jury must have believed from the evidence that the hole into which the mule thrust his leg was located "at a place in the crossing over which one might ordinarily drive his team with safety," because if they had

believed it was situated outside of the highway "at the end of the 16 foot plank next to the rail and over the slope or wash of the ditch as defendant contended" it would have been their duty, acting under the very explicit instruction given them, to have responded in the negative instead of the affirmative to that issue.

The only question involved in the appeal as presented here is whether in any aspect of the testimony the defendant was warranted in insisting upon its right to present the question of contributory negligence to the jury. If the court below erred in holding and instructing the jury that there was no view of the evidence, in which the culpable conduct of the plaintiff's servant might be found to be the proximate cause of the injury, the error consisted not in the submission of one instead of two issues, because it was the province of the court to determine whether one or both of the issues should be submitted and the duty of the Judge to adapt the instruction upon any phase of the evidence tending to show contributory negligence, either to one issue or both. *Scott* v. *Railroad,* 96 N. C., 428; *Denmark* v. *Railroad,* 107 N. C., 185; *McAdoo* v. *Railroad,* 105 N. C., 140. The controversy is, therefore, narrowed down to the single question whether there was any evidence of contributory negligence, and, in passing upon it, we must assume that all of the testimony offered for the defendant was true. It is admitted, therefore, that Sears who was in charge of defendant's train and business, said, when Riddick drove up with his cart, "Hold on old man, the boys will have on this log in a minute and we will move on," and that thereupon the elder Riddick took the whip from his son, who was with him in the cart, and struck the mule, saying as he did so, "There's room enough." It must be admitted for the same reason that Riddick's son said to his father, "You had better not drive on, the mule

is scary," and that the mule did become frightened at the car and in shying from it stepped into the hole. If the facts admitted are conclusive evidence of contributory negligence, then it was the duty of the court to so tell the jury, or if a reasonable mind could draw, as an inference from them, any conclusion of fact that would show a concurring culpability on the part of Riddick, it is the province of the jury to determine whether any such inference could be fairly deduced. It was legally incumbent on plaintiff's servant, the elder Riddick, to exercise ordinary care for the safety of the animal he was driving; but he was warranted in assuming that the defendant had discharged its duty to the public by keeping the crossing in safe condition. *Russell* v. *Town of Monroe*, 116 N. C., 720; *Bunch* v. *Edenton*, 90 N. C., 431. When therefore he drove up to the crossing and saw that the space between the rear end of defendant's car and the end of the plank crossing was sufficiently wide to allow the cart to pass, he was no more culpable in attempting to cross without delay than are the hundreds of persons who, when there is no apparent danger of collision with a passing train, daily drive through openings between cars left for the purpose often in obedience to a town ordinance limiting the time of obstructing a street to five or ten minutes. When a train is approaching, it of course has the superior right to the use of its track as a public carrier (McAdoo's case, *supra*,) but the weight of authority and of reason is in favor of the proposition that persons in vehicles are not culpable for driving through a sufficient opening left between the cars that are standing across a highway, and that persons on foot are not negligent in climbing over the steps of such cars, though not under them, provided they exercise ordinary care to avoid collision with moving trains. *Alexan-*

117—36

*der* v. *Railroad*, 112 N. C., 720 ; 2 Shear. & Redf., Section 479.

In this case there was no reason to apprehend danger from an approaching train, and Riddick was not wanting in care when he acted on the assumption that the crossing was in safe condition, unless the language used by Sears was such a warning of danger as to warrant a prudent man in questioning the correctness of what he had previously taken for granted as to the condition of the highway. In order to determine what was ordinary care on the part of Riddick, it is proper to look at the surrounding circumstances from his standpoint. The advice of his son was not sufficient to put him on the alert as to the condition of the highway. Conceding as he doubtless did that the mule might become frightened, it did not follow as a result to be reasonably expected that its leg would be endangered by a hole, which the father had rightfully assumed was not there and of which he still had no notice. The law required of him to act with reasonable caution upon what appeared to him to be the facts, not upon the volunteered opinion of any one who happened to be present. *Roseman* v. *Railroad*, 112 N. C., 719. Riddick did not at any time lose entire control of the mule, and the mere fact that in shying momentarily its leg was caught in a hole in that portion of the crossing that was required to be kept safe for the passage of horses, is not deemed evidence of the concurring negligence of the driver, because all horses are liable "to swerve momentarily from the track." 9 Am. & Eng. Enc., 387, 388, note 1 ; *Aldridge* v. *Gorman*, 13 Am. & Eng. Corp. Cases, 688.

This Court held in Roseman's case that it was not culpable in a conductor to refuse to act upon the gratuitous opinion of another who did not appear to have had a better opportunity to judge of the situation than himself, as to

the danger of injury to one who had been expelled from
the train.    But the exclamation of Riddick's son is not to
be interpreted as meaning that he knew anything about
the condition of the crossing or that he apprehended any
danger, except that the mule might become frightened and
kick or run away.    The father had equal knowledge of
the mule, the same opportunities for forming an opinion
as to the danger, and probably more experience of the kind
that would fit him to form a correct judgment as to what
it was proper to do under the circumstances.

As from his standpoint Riddick saw the situation, it
appeared that there was abundant room to pass over a safe
road.    2 Shearman and Red., Sec. 479.    When Sears said
to him "hold on old man, the boys will have this log on in
a minute and move on," it was perfectly natural that
Riddick should infer that Sears did not think he had left
sufficient space for the cart to pass in rear of the car, and
the reply "there's room enough" clearly showed that such
was the construction he placed upon the language.    Had
Sears said "look out, there is a dangerous hole in the cross-
ings on that side, I will move off so you can avoid it," the
case would have been materially different from that before
us.

In Russell's case, *supra*, this Court said, "a person is
not negligent in failing to provide against what could not
reasonably have been expected, much less against a danger
that she was warranted in assuming did not exist.    *Blue
v. Railroad*, 116 N. C., 955."

"Had it appeared that the plaintiff actually saw the
hole or that she was warned against it in time to have
avoided falling into it, the case would have presented a
different aspect.    We are not called upon to discuss the
legal effect of disregarding an explicit warning of the par-
ticular danger which confronts a person, when it comes

from one who is in a position to know the situation and whose duty it is to give such caution." It was the duty of defendant to keep the crossing repaired, and of the manager to observe and know its condition. Another question suggested in this connection is whether it was not negligence on the part of the defendant to fail to warn Riddick of peril from the defective condition of the plank, and whether that omission of duty would not have been deemed the proximate cause of the injury, even though some antecedent contributory negligence on the part of the plaintiff's servant had been shown. 2 Shearman, *supra*, Section 346. But since we have reached the conclusion that there was no evidence of the culpability of the plaintiff, it is needless to discuss this phase of the case, and it is suggested only as an argument in support of the position that the court below did not err in holding that there was not sufficient evidence of contributory negligence to require the submission of the question to the jury.

We cannot conceive how the reason given by the court for refusing to submit the question of contributory negligence, could have misled the jury in passing upon the main issue involving the culpability of defendant. It was the duty of the company to keep the crossing in safe condition, and when the jury were told that it was negligence on its part to leave holes between the plank, into which a horse's foot might be thrust, in the portion of the road passed over by vehicles, but not on that part where persons did not pass, we fail to discover any just ground for complaint of the charge. 2 Shearman, *supra*, Sec. 346.

It is settled law that where testimony is admitted for a purpose for which it is competent, but without explanation might mislead the jury upon another aspect of the case, a caution from the Judge in his charge that it is to be considered only in the view in which it was admitted,

removes all ground for exception. This disposes of the first exception, as the court cautioned the jury to consider the testimony only as it tended to show a demand.

The question intended to elicit from a witness a description of the exact condition of the crossing was also plainly competent. In view of the fact that we have approved of the charge of the court, which made the question of defendant's negligence dependent upon their finding as to the defects in the highways, it would seem needless to discuss the exception further. It was competent for the court to allow a witness to use a diagram of the crossing, &c., which he testified was a correct representation of it. *State* v. *Whiteacre*, 98 N. C., 753. This is not an instance of offering a map to show location, where that is the main question, but to illustrate the testimony of the witness as to the relative positions of objects and their distance from each other, as bearing upon an issue involving the exercise of proper care by both parties.

For the reasons given we conclude, after a careful review of all the exceptions, that there was no error.

No Error.