MARTIN RAPER, Administrator of W. H. Raper, v. WILMINGTON
AND WELDON RAILROAD CO.

(Decided May 22, 1900.)

*Damages—Dangerous Construction—Crossing Highway—*
*Evidence—Similar Construction Elsewhere, Dangerous*
*—Defective Construction, How Remedied—Different*
*Construction Elsewhere—Crossings to be Safe and Con-*
*venient.*

1. Where the intestate's foot was caught between a T rail and a guard-
   rail at a crossing, while it was competent to show the defective
   and dangerous construction resulting in the accident, it was
   incompetent for that purpose to show that at another crossing
   a different construction was in use.

2. It was competent for that purpose to show that at another crossing
   a similar construction was in use, and that people have got their
   feet caught in it between main rail and guard rail.

3. It was evidence of negligence in the construction, that instead of
   filling in the space between the two rails with dirt, the space
   was left open, wide enough and deep enough to catch a man's
   foot and confine it.

4. While railroad corporations are given the right and power to con-
   struct their roads across streets, highways, etc., Code, sec. 1957
   (5), they must maintain a safe and convenient crossing there,
   making it, as far as they can, as safe and convenient to the pub-
   lic, as it would have been had the railroad not been built.

CIVIL ACTION for damages for occasioning the death of
intestate, W. H. Raper, by the defective and dangerous con-
struction of its road at a public crossing near Lucama in
Wilson County, N. C., tried before *Moore, J.,* at May Term,
1899, of WILSON Superior Court.

There was evidence tending to show that on March 20,
1897, the plaintiff's intestate on his way home from Lucama,

RAPER *v.* RAILROAD CO.

about 10 o'clock at night at a public crossing got his foot caught and held fast between a T iron and guard-rail, and was run over by defendant's train and instantly killed. The negligent, defective and dangerous construction at this crossing is the alleged cause of the accident. The defendant introduced no evidence. The jury found that there was no negligence, and judgment was rendered in favor of defendant. Plaintiff appealed.

*Messrs. F. A. Woodard,* and *Connor & Son,* for appellant.
*Messrs. Aycock & Daniels,* and *F. H. Busbee,* for appellee.

DOUGLAS, J. This is an action brought by the plaintiff for the recovery of damages for the alleged negligent killing of his intestate. The testimony tended to show that the plaintiff's intestate was killed at a point on the defendant's track where it crossed the public highway, at which point a guard-rail had been placed upon the cross-ties and attached to them, curving at each end, being about two and one-half inches at center from the rail on the main track. The guard-rail was shivered at a point about one foot from where the shoe worn by plaintiff's intestate was found wedged in between the guard-rail and the rail of the main track. There seems to be no question but that the plaintiff's intestate was killed by the defendant's train.

The plaintiff contends that the defendant was guilty of negligence in the construction of its track at said crossing; that the guard-rail was made out of an old worn-out rail, which by wear and tear had become shivered; and that the defendant was also negligent in failing to fill in the space between the guard-rail and the main rail with dirt, so that a person walking along or crossing the track would not be in danger of having his foot caught between the guard-rail and

the main track.    There was testimony tending to support
these contentions.

The defendant introduced no evidence, and the jury found
that the defendant was not negligent.    There are no excep-
tions to the charge, and therefore the only questions before
us are the plaintiff's exceptions relating to the exclusion of
·evidence.

The plaintiff proposed to show the manner in which the
guard-rail was placed at the crossings of defendant's tracks
over the streets at Wilson, for the purpose of showing that
the crossing at which the intestate was killed was defectively
constructed.    This evidence was excluded, and we think
properly so.    It was competent to show that the crossing in
question was defectively constructed, or that it was con-
structed in an unusual, unnecessary and dangerous manner;
but the mere fact that two or three other crossings were con-
structed in a different manner does not of itself even tend to
prove either of these essential facts.

The second and third exceptions are for the exclusion of the
following testimony:    The plaintiff asked the witness, "If
the road-bed beneath the rail and guard-rail had been filled
to within two inches of the top of the rail, would it have
been possible for the shoe to have been caught in the rail?"
The plaintiff further proposed to show the depth of the space
necessary to protect the flange of the wheels.    We think this
evidence was clearly competent, and that there was consequent
error in its exclusion.    It directly tended to prove the
material fact in controversy—the defective construction of
the crossing.    We presume no one will question the duty
of a railroad company to construct and maintain a safe and
convenient crossing where it intersects the public highway.
*Bullock v. Railroad,* 105 N. C., 180; *Hinkle v. Railroad,* 109

N. C., 472; *Tankard v. Railroad,* 117 N. C., 558; Wood Railway Law, sec. 420.

The public highway, in olden times the King's Highway, is the highest form of easement known to the law; and, whether by land or water, can not be interfered with except under the direct stress of circumstances. The invention of steam locomotion introduced a new form of common carriers whose peculiar nature, with its resulting benefits, as well as duties to the public, necessitated the creation of a new form of highway. Railroad companies can not run their trains on the ordinary public road, and if they could, by so doing they would practically destroy their use to the public. They must have a road of their own constructed in such a manner as to meet the peculiar requirements of their business, in the construction and operation of which they necessarily acquire peculiar privileges and exemptions with their corresponding duties and liabilities. These peculiar privileges can be given only in consideration of public service, and are limited by the necessities of such service. Thus they are given the right to cross the public highway and even to change its location, if necessary; but this they must do with as little inconvenience as possible to the travelling public. Where they interfere with the highway in any manner, they must, as far as they can, make it as safe and convenient to the public as it would have been had the railroad not been built. Otherwise they become guilty of obstructing a public highway with its consequent civil and criminal liabilities. The Code, sec. 1957, sub-sec. 5, provides that: "Every railroad corporation shall have power to construct their road across, along or upon any stream of water, watercourse, street, highway, plank road, turnpike or canal which the route of its road shall intersect or touch, but the company shall restore the stream or watercourse, street, highway, plank road and turnpike road,

thus intersected or touched, to its former state, or to such state as not unnecessarily to have impaired its usefulness." Sec. 1954 gives the company the right to carry the highway under or over its track, as may be found most expedient, and to acquire by condemnation or otherwise such land as may be necessary to use in restoring the highway.

The granting of such powers presumes their use when necessary, and clearly indicates the purpose of the law that the highway shall be fully restored as far as possible at any reasonable expense.

In the case at bar, if the highway was obstructed or its use rendered dangerous by any unnecessary act of the defendant, either in its negligent construction of the crossing or its failure to keep it in proper repair, then the plaintiff is entitled to recover such damages as resulted therefrom. The plaintiff was entitled to show the dangerous condition of the crossing. This dangerous condition when proved would be *prima facie* evidence of negligence on the part of the defendant whose duty it was to keep the crossing in proper condition. *Marcom v. Railroad,* at this term.

The defendant might then either rest upon its denial of the fact, or show that the dangerous condition arose from circumstances and conditions beyond its control. For instance, the defendant might deny that the guard-rail was dangerous to travellers on the highway, or, admitting its danger, might show that the guard-rail was necessary for the safety of its train; that it was laid down so as to cause as little obstruction or danger as possible to the highway; that it was at the proper distance from the main rail, and that it would be dangerous to fill up between the rails with dirt to any extent. In other words, it might deny the dangerous condition of the crossing, the burden of proving which would rest upon the

plaintiff, or it might assume the burden and show that such condition did not arise from any negligence of its own.

The plaintiff's fourth exception is to the exclusion of the following testimony, as shown by the record: "Plaintiff proposes to show by this witness that the crossing near his house on same road is constructed like this one, and that people have got their feet caught in it between main rail and guard-rail." We think the evidence was competent. It is essentially dissimilar from the first exception, because it is proposed, not simply to show that this crossing was like another crossing, but that this crossing was dangerous because another crossing of similar construction had proved to be dangerous. Similar causes under similar circumstances produce similar results, and if a machine of a certain make prove dangerous in ordinary handling, it is fair to presume that other machines of the same make may be equally dangerous. Where, however, the danger arises from some flaw or defect peculiar to the individual machine and not arising in any way from its method of construction, this rule may not be applicable. In the present case the evidence was clearly competent.

We have treated this case as depending upon the negligent construction of a crossing at the intersection of a public highway, and so it is presented to us. But there is a suggestion in the evidence that we think proper to notice: If the crossing was so constructed and maintained by the defendant as to be perfectly safe to anyone crossing its track upon any part of the highway, we think it has sufficiently fulfilled its duty to the public, even if it were possible for a person walking down the track to get his foot caught in such a manner, as would be impossible were he simply in the ordinary use of the highway. A railroad company using machinery of the most dangerous nature is held to a high degree of care in the performance of its legal duties; but its track is not a public

RAPER *v.* RAILROAD CO.

foot-way, and it is not required to keep it in repair for such a purpose.

Of course this want of previous negligence would not relieve the defendant from liability for injury to one on its track, when such injury might have been avoided by reasonable care and diligence on its part. But that question is not developed by the evidence.

It is alleged in the complaint and admitted in the answer that the crossing in question was "a public crossing for the passing of persons and vehicles over said track." Whether the crossing was defective, and if so, whether such defect was the cause of the injury, are questions for the jury under proper instructions from the Court. If there was no defect, either in the construction or maintenance of the crossing, there was no negligence on the part of the defendant in that regard, who, unless shown to have been negligent in some other respect, would not be liable to the plaintiff for the death of his intestate.

These are questions to be settled by the jury upon a new trial, which must be ordered for the exclusion of competent testimony.

New trial.