This is an action to enjoin, and also to recover damages for the blocking of a "crossing" by the defendant's train near Norlina, N.C. In February, 1912, the defendant purchased 60 acres of land from W. R. Creed 
Co. In order to enlarge its yards at Norlina, and soon thereafter constructed five tracks across the same in pursuance of that purpose.
The plaintiffs, prior to the purchase of this land by the defendant, had a contract with said W. R. Creed Co. for handling timber on a 2,400-acre tract of land on the south side of the defendant's track. The planning mill of the plaintiffs to which the timber on this 2,400-acre tract was to be hauled is on the north side of defendant's track near the point mentioned in the complaint as "A" Street. The road used for this purpose crossed defendant's track at that point. This was not a public *Page 609 
crossing and has not been accepted by the public road authorities, but has been used ever since the railroad was built, and it is also contended that the contract of the plaintiffs with Creed Co. entitled the plaintiffs to continue to use this crossing and to have the defendant prohibited from obstructing its use.
The jury responded to the issues that the defendant obstructed the crossing as alleged, and assessed the plaintiffs' damages at $150, and the court upon the pleadings and findings forbade and enjoined the defendant from obstructing "the crossing described in the pleadings at the northern terminus of `A' Street at or near Norlina by leaving box cars or other obstructions thereon; but this shall not prevent the shifting of the cars thereon to the extent that is allowable by law and that will not constitute an obstruction of the same." Damages are allowable for obstruction of highway. Sloss v. Johnson, (Ala.) 8 L.R.A. (N.S.), 226, and notes.
The defendant excepts to the evidence as to the existence of the right of the plaintiffs to cross the railroad track at that point.
The testimony shows that there was a road at that point in 1836 when the Raleigh and Gaston Railroad (the predecessor of the defendant) was built, and that it has been in use ever since, and that during all the time since 1836 it has been a material and necessary crossing for a large number of people, and especially to the tenants, now 39 (525) in number, on the 2,400-acre farm on the south side of the railroad. When the defendant was negotiating the purchase of this 60 acres from W. R. Creed Co., the said Creed had contracted with one of the plaintiffs and Mr. Foust to have the timber on this 2,400 acres marketed and to sell to Tate Foust a half interest therein. This contract was executed 21 November, 1906, and is set out in the record. During the negotiation between Creed Co., and the defendant in regard to the sale and purchase of the 60-acre tract of land, said Creed 
Co. wrote the defendant a letter in which they stated that it was absolutely necessary, before Creed Co. would sell said 60 acres to the defendant, that it should be understood that "A" Street must be left open, and that they would not agree to a change in this road and crossing which the defendant had proposed. To this the general manager and vice president, C. H. Hix, who was acting for the defendant, replied: "The road or outlet to which you refer is a public thoroughfare and can only be closed by us in one of two ways: Condemnation or the consent of the board of supervisors of public roads." These letters were in evidence and are set up in the record.
It is true that in the deed thereupon made by said W. R. Creed Co. to the defendant there is no reference to said crossing, but this evidence *Page 610 
was competent to show an admission and knowledge on the part of the defendant of the nature of said crossing and that the purchaser could not abolish or obstruct the same without legal condemnation. This is not the case where the preliminary negotiations between the parties are merged in the final contract or conveyance, which is the final conclusion of the contracting parties. But this is the recognition of a status of the surrounding conditions in the acknowledgment that there was a public crossing at that point which the defendant could not and would not attempt to obstruct or abolish.
The duty of railroad companies to so construct their roads as not to interfere with the use of any public road or private way is fully discussed, with the citation of authorities, in R. R. v. Goldsboro, 155 N.C. 356
(affirmed on writ of error, 232 U.S. 548); Cooper v. R. R.,140 N.C. 229, and Wilson v. R. R., 142 N.C. 333, and additional authorities are set out in the concurring opinion in Herndon v. R. R., 161 N.C. 650. In the latter case Elliott on R. R., sec. 1138, is cited: "The rule, however, is that a deed to a railroad does not constitute a waiver of a right of way to a private crossing, and the owner whose land has been severed into parcels may claim and enforce the right to a crossing, notwithstanding his unconditional instrument of conveyance." The correspondence above quoted was competent as showing that the defendant's representative had knowledge of the existence of this crossing (526) and stated that he knew he could not interfere with it except by condemnation or the consent of the road authorities of the county.
Besides, the defendant and its predecessor had maintained that crossing for seventy-seven years, including two years after the deed to it by Creed Co. of the 60 acres of land in January, 1912, which was accepted after the defendant had expressed its knowledge of the existence of the crossing and that it had no right to abolish it and no intention to do so.
Even if this had been a case where the railroad had been freshly constructed, it was required in crossing "established road or ways to so construct its works as not to impede the passage or transportation of persons or property along the same" (Rev. 2569), and also to "make and keep in constant repair crossings to any plantation road thereon." Rev., 2601;Raper v. R. R., 126 N.C. 563.
The word "ways" in above cited Rev., 2569, is construed to embrace "recognized and customarily used roads and ways less than highways."Goforth v. R. R., 144 N.C. 569. This is cited with approval in Herndon v.R. R., supra, quoting Rev., 3753, which makes it an indictable offense for any railroad to "fail to make and keep in constant repair crossings to any plantation road thereupon." *Page 611 
A public highway is defined, Rev., 2681. In Goforth v. R. R., supra, it is said: "Rev., 2567 (5), does not restrict defendant's duty to crossings by `public highways,' which might include any road used by the public as a mill and church road or in going to town, as was this road. Revisal, sec. 2569, is still more explicit by placing on the railroad company the duty of not impeding the passage of persons and property by the construction of its road over `established roads or ways'; that is, as we understand it, recognized and customarily used roads and ways, less than highways. Indeed, we think this would be so, as of common right, independent of any statute, under the maxim, Sic utere tuo, ut alienum non laedas."
There is no contention that the correspondence between Creed Co. and the defendant prior to the conveyance of the 60 acres created this right of way. The deed embraced the contract between the parties, and the preliminary treaty was merged into it. But such preliminary correspondence was competent to show, if it had been necessary, that the defendant was aware of the crossing and expressed its intention not to interfere with it. Certainly the defendant and its predecessor having recognized the existence of this crossing for seventy-seven years, cannot now be heard to deny its existence, or to assert for the first time, in its answer, the right to obstruct it.
This legislation is simply the assertion of the inalienable right of the public that when the public convenience and the convenience of a corporation (which derives its life from public authority) or of any other enterprise conflict, the convenience of the sovereign, the (527) people, who create corporations and support all business, is paramount. A railroad company itself is chartered for the public convenience, the right to a profit therefrom being incidental.
There is no excuse for such conflict, not only when, as here, the road or way existed before the railroad was built, but on any occasion, for the corporation can always avoid any conflict by putting in a subway crossing either for itself or for the use of the public. In many countries, and in several of our states, grade crossings by railroads are absolutely forbidden. With our steadily increasing traffic, both on railroads and on the roads and ways of the people, this will soon be a necessity here. The Corporation Commission has long had authority to abolish grade crossings. Rev., 1097 (10). When such crossing becomes dangerous or inconvenient to the public, it is the operation of the railroad that makes it so, and as the use of the railroad is in subordination to the rights of the public, instead of taking from the people the use of their roads and ways, the railroad company should avoid such interference at their own expense.
No error. *Page 612