# DENKERS· v. SOUTHERN PACIFIC CO. et al.

No. 3031.   Decided February 16, 1918.   Rehearing denied April 10, 1918.
(171 Pac. 999.)

1. RAILROADS—CROSSING ACCIDENT—EVIDENCE. In action against railroad company for injuries received when plaintiff's automobile was struck by a train at crossing, evidence *held* to support jury finding of defendant's negligence in failing to keep the crossing in a reasonably safe condition.   (Page 21.)

2. RAILROADS—CROSSING ACCIDENT—EVIDENCE. Evidence *held* to support jury finding of negligence, in that defendant's train was running at a dangerous speed.   (Page 22.)

3. RAILROADS—CROSSING ACCIDENT—QUESTIONS FOR JURY. Whether the electric bell at the crossing rang as the train approached the crossing *held* for the jury.   (Page 24.)

4. RAILROADS—CROSSING ACCIDENT—QUESTIONS FOR JURY. Contributory negligence *held* a question for the jury.   (Page 24.)

5. RAILROADS—CROSSING ACCIDENT—INSTRUCTIONS—"GOOD AND SUFFICIENT CROSSING." On the issue whether the railroad maintained a "good and sufficient" crossing, as expressly required by Comp. Laws 1907, section 445, the court might properly charge in general terms that a good and sufficient crossing is a crossing that is sufficient and ordinarily safe for the traveling public to pass to and fro over it, keeping in mind its location, whether in a sparsely settled or populous locality, and the character and volume of traffic that ordinarily may be expected to pass over it.   (Page 26.)

6. RAILROADS—CROSSING ACCIDENT—QUESTIONS FOR JURY. There being no statute specifically defining what a "good and sufficient" crossing consists of, the question whether a railroad has constructed such a crossing, as expressly required by Comp. Laws 1907, section 445, is ordinarily one for the jury, unless it clearly appears that but one conclusion can be drawn from the evidence as to· the condition of the crossing, when it is a question of law for the court. (Page 26.)

7. APPEAL AND ERROR—HARMLESS ERROR—INSTRUCTIONS. In action for injury from crossing accident, in instructing on railroad's duty to maintain, as expressly required by Comp. Laws 1907, section 445, a "good and sufficient" crossing, failure to define what a "good and sufficient" crossing consists of was harmless, where the evidence showed, as a matter of law, that the crossing was not good and sufficient.   (Page· 26.)

FRICK, C. J., dissenting in part.

Appeal from the District Court of Weber County, Second District; *Hon. N. J. Harris*, Judge.

Action by Herman B. Denkers against the Southern Pacific Company and others.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*Geo. H. Smith, J. V. Lyle, B. S. Crow* and *C. R. Hollingsworth* for appellant.

*Skeen & Skeen* for respondent.

## STATEMENT OF FACTS.

Plaintiff brought this action to recover damages for personal injuries which he alleges he sustained because of the negligence of the defendants. The cause was tried to a jury, who returned a verdict in favor of plaintiff. To reverse the judgment entered on the verdict defendants have prosecuted this appeal.

It is alleged in the complaint, and admitted in the answer, that the defendant Southern Pacific Railroad Company, a corporation, hereafter called company, "owns, operates, and controls a steam railroad between Oakland, Cal., and Ogden, Utah, over which it transports freight and passengers for hire; that said railroad extends from Ogden Union Depot in Ogden, Utah, in a northwesterly direction across Seventeenth street, a public highway within the city limits of Ogden, Utah, thence westerly to the Great Salt Lake."

The act and omissions of the defendants which the plaintiff alleged in his complaint as negligence were: (1) That on February 17, 1915, and for a long time prior thereto, the Company and defendant Rowland, division superintendent in charge of the Company's roadbed, "failed and neglected to

make and maintain a good and sufficient crossing of the said railroad tracks, and had caused said tracks to be constructed and maintained across the said Seventeenth street without adequate or sufficient aproaches to the said railroad tracks, and without raising the said public road to the elevation of its said rails on either side, and without causing the space between the rails to be filled up and raised to a proper and safe elevation, with plank, cement, gravel or other suitable material and   *   *   *   maintained said tracks with narrow, low, steep, and insufficient approaches and with no filling whatsoever between the said rails," etc.; (2) that on the 17th day of February, 1915, plaintiff, while traveling in an easterly direction along said Seventeenth street in an automobile, and when in the act of passing over and across said railroad track on said crossing, the Company and defendant Thomas Lindsay, a locomotive engineer, "caused a locomotive engine and passenger train to be propelled at an excessive, unreasonable, and dangerous rate of speed, and without adequate, or any warning to plaintiff, around a curve to, against, and upon said automobile,   *   *   *   and by force of the impact plaintiff was hurled from said machine approximately 50 feet, through a lumber fence, into a ditch"; that his skull was thereby crushed; that it became and was necessary to have skilled surgeons and physicians remove a portion of his skull, etc.

Defendants, in their answer, "admit that on February 17, 1915, plaintiff drove his automobile to the edge of said railroad crossing and tracks, but no further, that plaintiff, without going onto said tracks, there collided with the locomotive engine of the defendant   *   *   *   Company, and that through the force and impact of such collision, plaintiff was hurled several feet into a ditch and was injured, and that plaintiff thereafter had a surgical operation by reason of said injuries; and these defendants admit that plaintiff's injuries were severe." Defendants, however, allege that:

"The injuries, which are a consequence of said accident were caused, and the cause thereof directly contributed to, by the careless, negligent, and heedless acts of the said plaintiff at the time of and leading up to the happening of the said acci-

dent, and were not caused, nor the cause thereof contributed to, by any negligent act, fault or omission on the part of the defendant * * * Company, its officers, agents or employees, or the other defendants, or either of them."

McCARTY, J. (after stating the facts as above).

There is abundant evidence to support a finding by the jury that the Company was negligent, and grossly so, in failing to keep the crossing, where the accident in question occurred, in a reasonably and ordinarily safe condition. In fact there is no substantial conflict in the evidence respecting the alleged dangerous condition of the crossing at the time of and long prior to the accident. Paul Kammeyer, a witness for plaintiff, testified, and his evidence is not disputed in any particular, in part as follows:

"I observed the condition of the crossing on the morning of the 18th (the day after the accident occurred), and found it to be as follows: The ties were bare, and there was no gravel or cinders on the inside of the rails. There were mudholes right in between the ties in the crossing, and the dirt was about two inches below the ties on the outside of the rails, on the outside of the crossing. I took a flat stick, laid it across the two rails of the west track, and measured with a yardstick the distance from the bottom of the mud between the rails to the stick. I found it to be nine and one-half inches close to the west rail, thirteen and one-half inches in the center of the track, and eleven and one-half inches near the east rail. I measured in front of the west rail and found the mud to be a trifle more than seven inches deep. * * * I saw a couple of guard rails laying on the west side of the rails, on the west side of the road. There were no guard rails, or planks, or anything of that kind at the crossing of the track, between the rails."

In fact the negligence of the Company in failing to keep the crossing in ordinarily good repair is, in effect, admitted. Counsel for appellants, in their printed brief, say:

"Plaintiff was negligent also by reason of the general principle that one who goes upon a rough and dangerous crossing,

knowing it to be rough or dangerous is, by the act itself, guilty of contributory negligence.''

There is ample evidence to support a finding by the jury that the train on that occasion, as it approached the crossing and when it collided with the plaintiff and his automobile, was going at the rate of from thirty-five to forty miles per hour. The jury might well find that this, under the circumstances, was a dangerous rate of speed and constituted negligence on the part of the Company and Lindsay, the engineer. We deem it unnecessary to further consider the question of the alleged negligence of defendants, except to repeat that there is substantial evidence to support the findings of the jury in that regard.

The important question presented by this appeal is, Was respondent, as a matter of law, guilty of contributory negligence? The particular facts and circumstances leading up to and which culminated in the collision mentioned, over which there appears to be no conflict in the evidence, are as follows: On February 17, 1915, respondent, who was an employee of the Boyle Furniture Company, of Ogden, Utah, had occasion to travel along Seventeenth street, in a westerly direction, in an automobile. Referring to the movements of respondent on that occasion, appellants, in their printed brief, say:

''In passing over the railroad tracks going westerly, he noticed the condition of the crossing; in fact he stated that he had difficulty in getting over, although he did not stall his engine or stop his car. Denkers (respondent), having passed over the crossing, made certain collections from customers residing in the neighborhood lying immediately west of the railroad track, and at about half past 4 o'clock of that afternoon turned back toward Ogden. In doing this it was necessary for him to pass over the same crossing which he had passed on his trip out, which he testified was unusually rough, having practically no ballast between the rails.''

Regarding his movements and the diligence, if any, he used in looking and listening for approaching trains just prior to and at the time of the collision, respondent testified in part as follows:

"In making that trip, I had crossed this track once before that day, while it was raining or snowing. When I returned it was snowing and the wind was blowing I presume from the west. *  *  *  My top was up."

He further testified that as he ascended the incline, the approach to the crossing, he "threw the car into low gear," and "approached the tracks at a speed of about 5 miles an hour," and, further:

"I was in a bend of the road about a half or three-quarters of a block west of the track when I looked up to see if a train was approaching. After passing this bend I kept looking up the railroad track in a northerly direction to see if a train were approaching. I continued to look through the isinglass in the side curtains until I reached the track. When I reached the track I didn't hear the bell ringing nor the whistle of a train. *  *  *  After looking up the track I went up to the first rail. *  *  *  I experienced considerable difficulty in getting my auto across the first rail. *  *  *  When I struck the west rail of the track, the first thing I did was to apply more gas, for my speed was insufficient to get across, and I had to have more power, because I knew I was in a dangerous place. *  *  *  I got over the first rail, and in between that and the next rail constituting the track, I had more difficulty. *  *  *  The front wheels of my automobile *  *  *  went right up to the second rail, and in attempting to cross it I applied more gas. I skidded the front portion of the auto towards the south. The engine of my auto stopped, and I commenced to get out for the purpose of cranking the machine. *  *  *  The side curtains of the car were not fastened. *  *  *  I was in the act of getting out *  *  *  when I was struck."

On cross-examination he testified in part as follows:

"Q. Mr. Denkers, you were on that crossing for some little time or quite an appreciable time, were you? A. I was there for a moment. Q. That moment was just long enough for you to pass over one rail and to come to the other rail and skid and stall your engine? A. Why, if the crossing had been in good condition it was just long enough for me to have got clear of

it. * * * Q. Did you look for the engine after you got on the track—did you look? A. Yes, sir."

Regarding the space of time he was on the railroad track before he was struck by the engine, he testified in part as follows:

"Well it was difficult to determine the time, but my opinion is it would be less than a minute."

The evidence relating to the distance an approaching train from the north can be seen from the crossing is not as clear as it might be. Counsel for appellant, in their brief, says that a train coming from the north can be seen from the crossing a "distance at least of 1,000 feet." There is some substantial evidence to support this contention.

As we have pointed out, there is evidence to support a finding by the jury that the train, as it approached the crossing on the occasion in question, was going at the    3, 4 rate of from thirty-five to forty miles per hour. Traveling at the rate of thirty-five miles per hour a train would go 3,080 feet per minute, or approximately 51.3 feet per second. At that rate of speed it would require twenty seconds only for the train to go approximately 1,000 feet, the distance which it is claimed it could be seen from the crossing. Traveling at the rate of forty miles per hour, the train would go 1,000 feet in approximately seventeen seconds. There was an electric bell at the crossing. Witnesses for appellant testified that they heard the bell ring as the train approached the crossing. Plaintiff testified that he did not hear it ring. Other witnesses who were in the vicinity of the crossing at the time of the accident testified that they did not hear the bell. The evidence shows that the bell is a mechanical device that "may get out of order." Under the circumstances, we think the question as to whether the bell rang on that occasion was for the jury to determine. Taking into consideration the rapidity the jury was warranted in finding the train was moving, and the short space of time in which it passed over the 1,000 feet that it could be seen from the crossing; the all but impassable condition of the crossing and the approaches thereto were in, as shown by the evidence; the trouble plaintiff testified he

had in getting his automobile over the west rail of the railroad tracks; the stalling and skidding of the automobile and the killing of the engine in trying to force it over the east rail —we are not prepared to say that as a matter of law plaintiff was guilty of contributory negligence. To hold that the plaintiff was, under the peculiar and somewhat unusual circumstances of this case, as a matter of law, guilty of contributory negligence would be casting practically the entire burden on the traveling public to guard against and avoid accidents at railroad crossings, and would, in effect, grant immunity to railroad companies from liability in such cases, however careless and negligent they might be in maintaining the railroad crossings and approaches thereto, and in operating and running their trains to and over the crossings.

Counsel for appellant have cited in their brief numerous decisions, some of which are Utah cases, in support of their contention that plaintiff, under the facts as disclosed by the record, is not, as a matter of law, entitled to recover. We have examined the cases cited and in none of them are the facts the same, or even similar, to the facts of this case. Counsel cite and quote from Elliott on Railroads, vol. 3 (2d Ed.), section 166, wherein the author says:

"The duty to look and listen, requires the traveler to exercise care to select a position from which an effective observation can be made. The mere fact of looking and listening is not always a performance of the duty incumbent upon the traveler, for he must also exercise care to make the act of looking and listening reasonably effective, and must usually continue to be on the lookout and exercise his faculties until he has crossed. * * * He has, indeed, no right in any case to omit to take precautions for his own safety upon the supposition or assumption, that he may safely cross the track."

This doctrine is declared by the other authorities cited by counsel on this point. The difference, if any, in the cases cited consists only in the phraseology used in illustrating the doctrine. We recognize the wholesomeness of the doctrine and have no desire or disposition to depart from it.

The court, in the case at bar, instructed the jury in part as follows:

"You are instructed that the plaintiff, in attempting to

cross the railroad track of the Southern Pacific Company, was, as a matter of law, bound to listen for signals, notice signs put up as warnings, and look attentively up and down the track; and, if by looking he could have seen an approaching train in time to escape, it must be presumed, either that he did not look, or if he did look, that he did not heed what he saw, and was therefore negligent.''

There is evidence from which the jury could find that plaintiff on the occasion in question looked and listened for an approaching train from the time he was 150 feet from the crossing until he got onto the railroad, and that the train was neither within hearing nor in sight, and that plaintiff fully appreciated the danger he was in when he started to cross the track. There is also evidence from which the jury might well find that if the crossing had been in ordinarily good condition for travel plaintiff would not have stalled,—killed,—the engine of his automobile in attempting to cross, and would have cleared the track before the train arrived at the crossing.

We have a statute (Comp. Laws 1907, section 445) which provides that:

''Every railroad company shall be liable for damages caused by its neglect to make and maintain good and 5, 6, 7 sufficient crossings at points where any line of travel crosses the road.''

The court charged the jury that:

''By statute it was the duty of the Southern Pacific Company to make and to maintain a good and sufficient crossing at the intersection of its roadbed and Seventeenth street, and that it is liable to the plaintiff for all damages, if any, which he sustained at said crossing by reason of its neglect to make and to maintain a good and sufficient crossing, if you find that it did neglect to make and maintain such crossing.''

The giving of this instruction is assigned as error. The objection to it is ''that it does not explain what a good and sufficient crossing consists of.''. We have no statute providing what shall constitute a ''good and sufficient'' crossing, namely its width, the grade of the approaches thereto, the kind of material to be used in its construction on either side of the rail-

road tracks, and the kind of ballast that shall be used to fill in
between the ties and rails, etc. The difficulty a court would
have to give a proper instruction as to what would constitute
a good and sufficient crossing in these respects is suggested by
the argument of appellant's counsel in their printed brief,
wherein they say:

"A crossing may be good and sufficient for one purpose and
not for another. It would not be expected of the railroad com-
pany that at a point like the one where the accident happened
it would have a crossing"
—as smooth and perfect as is ordinarily required where its
tracks cross the crowded thoroughfares of populous localities.
The court, in a case of this kind, might properly charge the
jury in general terms that a good and sufficient crossing is a
crossing that is sufficient and ordinarily safe for the traveling
public to pass to and fro over it, keeping in mind its location,
whether in a sparsely settled or populous locality, and the
character and volume of traffic that ordinarily may be ex-
pected to pass over it. No complaint, however, is made because
such an instruction was not given. There being no statute
specifically defining what a "good and sufficient" crossing
consists of, the question of whether a certain crossing is good
and sufficient is ordinarily one for the jury to determine from
the evidence adduced, unless it clearly appears that but one
conclusion only can be reasonably drawn from the evidence
respecting the condition of the crossing, in which case it be-
comes a question of law for the court. We think the only in-
ference deducible from the evidence in the case at bar is that
the crossing in question was at the time of the accident, and
for a long time prior thereto had been, in a dangerous and un-
safe condition. The court, therefore, might well have charged
the jury that the railroad company, under the circumstances,
was, as a matter of law, guilty of negligence in failing to keep
the crossing in a reasonably safe condition. This being so, the
question of whether the instruction referred to contains a
correct or incorrect statement of the law is, so far as this case
is concerned, unimportant. Assuming, but not conceding, that
the instruction was erroneous, and that the giving of it was,

as an academic proposition, error, the error, in view of the conclusions we have arrived at respecting the negligence of the railroad company in failing to maintain the crossing in a reasonably good condition, was harmless, and could not have prejudiced any right of appellant. The assignment of error in which the instruction is assailed is therefore overruled.

Numerous other errors are assigned, but we do not .deem them of sufficient importance to warrant discussion.

We find no reversible error in the record. The judgment is therefore affirmed, with costs.

CORFMAN, THURMAN, and GIDEON, JJ., concur.

FRICK, C. J.

I concur in the affirmance of the judgment. I, however, cannot concur with what is said by Mr. Justice McCARTY respecting the court's instruction to the jury upon the subject of railroad crossings. Upon that subject the court charged the jury in the language quoted by my Associate. The statute merely requires the appellants "to make and maintain a good and sufficient crossing," leaving it to them to select the material and to determine the manner of its construction. The statute is therefore merely declaratory of the common law. The duty imposed upon railroad companies in this state, therefore, is to exercise ordinary and reasonable care to make and maintain crossings at all points where by law crossings must be made and maintained which are adequate and sufficient to meet the requirements of the traveling public and to maintain them in such a condition that the public can safely use the same when in the exercise of ordinary care at all seasons of the year and during all hours of the day and night. In other words, it is the duty of railroad companies in this state to make and maintain the public highways and streets reasonably safe at all points where their railroads cross such highways and streets precisely the same as it is the duty of municipal corporations to make and maintain streets in a reasonably safe condition at all places where such streets are being used. *Raper* v. *Railroad Co.*, 126 N. C. 566, 36 S. E. 115. The high-

way must be maintained reasonably safe at all points where it is being used, and the duty to make and keep it reasonably safe and convenient for passage at crossings is precisely the same as at other points, the only difference being one of degree, in that the highway may be used more at a public crossing than at other points, and therefore it may require more care and more frequent inspection to keep the crossing reasonably safe at such places than it does at other points where the travel is intermittent. The degree of care is, however, ordinary care under all the circumstances. That such is the duty of railroad companies where the statute does not prescribe the character of the crossings has become almost elementary. 3 Elliott, Railroads (2d Ed.), section 1176; 33 Cyc. 825; White, Personal Injuries on Railroads, sections 909, 910; Elliott, Roads and Streets (3d Ed.), section 1017. Where, however the statute prescribes how the crossing shall be constructed, a railroad company is liable for any injury that is caused by reason of its failure to comply with the statute to any one who is using the crossing while in the exercise of ordinary care. *Scanlan* v. *Boston, etc., Co.*, 140 Mass. 84, 2 N. E. 787; *Hogue* v. *Chicago, etc., Ry. Co.* (C. C.) 32 Fed. 365. Where the duty is imposed by law, it becomes the duty of the court in all cases to instruct the jury what the legal duty is, and the jury will then determine from all the evidence whether the duty has been met or not. Take the instruction in this case and it in no way informed the jury what the duty of appellants was. True, it said if they failed to "make and to maintain a good and sufficient crossing," they were liable. What constituted a good and sufficient crossing was, however, left to the judgment of each individual juror, without stating to them what would constitute a good and sufficient crossing under the statute. As before stated, the duty imposed on appellants was to exercise reasonable and ordinary care to make and maintain a crossing which was of sufficient width and was constructed of such material that the traveling public could safely pass over it, either on foot or on horseback, or with all vehicles in ordinary use, and at all times and seasons, when the person using it was in the exercise of ordinary care. If

the crossing is by the jury found to be in such a condition then it is a good and sufficient crossing, and the jury should have been so instructed. If the question had been whether a highway or street was in a reasonably safe condition for travel, such would have been the charge, and there can be no distinction regarding the duty of maintaining a highway or a street in a reasonably safe condition and a railroad crossing in a highway or street. The forms of instructions stating the law as I have outlined it are both numerous and easily accessible. See 2 Brickwood, Sackett on Instructions to Juries, sections 1862, 1938, 1980. See, also, *Brecher* v. *Chicago Junction Ry. Co.*, 119 Ill. App. 559, where an instruction, which it was held correctly stated the law in a defective crossing case, is set forth. See, also, *Logan* v. *Lake Shore, etc., Ry. Co.*, 148 Mich. 603, 112 N. W. 506. I am of the opinion, therefore, that the instruction given by the court, and which was excepted to by appellants, was faulty in not correctly defining the duty of appellants in maintaining the crossing in question. I, however, concur with Mr. Justice McCARTY that in this case the error was without prejudice, for the reason that all the evidence is to the effect that the crossing in question was defective and unsafe, and therefore but one result is permissible.

The question of contributory negligence on the part of the plaintiff was submitted to the jury, and they found against appellants on that question. They also found that the defective crossing was the proximate cause of the injury. This court is therefore powerless to interfere with the judgment, and hence it should be affirmed.