This action was brought to recover $250, which plaintiff alleged that he had paid to M. A. Land, agent of defendant to sell him Lot No. 77 in the plat of the W. C. Leak lots in Hamlet, N.C. Defendant denied his liability. The facts, so far as the court permitted them to be shown, were that Land, who lived at Hamlet and was engaged in the business of a real estate broker, notified the defendant that plaintiffs would give him $250 for the lot. Defendant told Land that he would make the deed to the lot for that price, provided the money was paid by 1 June, 1911. This offer was made in May, and, at the time, defendant caused a deed to be prepared for delivery to plaintiffs upon payment of the purchase money by the first day of June. There was no written agreement between the parties. Land took the deed to Hamlet and tendered it to plaintiffs, when the plaintiff W. C. Binford requested that he be allowed to take the deed and show it to his partner at Richmond, Va., for his examination, which was done, and the deed afterwards returned to Land, when plaintiffs paid Land $215 and requested him to deposit it and the deed in the bank until the balance was paid, which he promised to do. Plaintiffs, in August, paid to Land the balance of the purchase money, that is, $35, but Land did not have the deed with him, stating that it was in the bank, and that he would go to Rockingham and get it. The defendant offered to show that he had withdrawn the land from sale and taken the deed from Land, but the court excluded the testimony. Plaintiff testified, under cross-examination, that he had alleged in his complaint that Land told him that defendant, Steele, had the deed at the time he paid the balance of $35. The court charged the jury that, if they believed the evidence, they should find that defendant is indebted to the plaintiff in the sum of $250. Verdict and judgment were rendered accordingly, and defendant appealed.
(663) After stating the case: As there was no written memorandum of a contract to sell the lot, signed by the defendant or his duly authorized agent, the transaction must be treated as an offer by plaintiffs to buy the lot for $250, and an acceptance by the defendant upon the condition stated therein, which modified the terms of the offer, and if plaintiff had notice of this condition, or private instruction to Land, as it was called in the argument, there was no agreement, and this was conceded; but plaintiff contended that he was not bound by this condition, as he had no notice of it. If that be *Page 539 
admitted, for the sake of the argument, it appears that plaintiff had not complied with the stipulation of defendant's offer, which was known to him, that he should pay $250 for the lot before the deed should be delivered. He was not entitled to the deed upon paying less than the whole of the purchase money. As said inHardy v. Ward, 150 N.C. 385, 392, when payment is the act of acceptance contemplated by the offer to sell land, it is a condition precedent to the vesting of any right in the vendee. There is some evidence in the case, as now presented, that plaintiffs knew the' deed had been withdrawn by the defendant, for Binford testified it had been so alleged in his complaint. It is true, he further said that he did not remember having made this statement, but that did not destroy the legal effect of the admission or the statement of the fact, but merely affected its weight before the jury. It was still competent as a declaration by him. This being so, there was evidence that he paid the $35 in his own wrong, that is, with knowledge of the fact, or circumstances which put him on notice as to it, that defendant had withdrawn the deed and revoked the sale. Plaintiffs were bound to know that by paying only a part of the price they acquired no right to the deed. If the deed had remained in the possession of Land, they might rightly have assumed that his agency still continued. When they handed the $215 to Land and trusted to him as their depository to hold the money in bank and the deed until it suited them to pay the balance, they were doing something contrary to the terms of defendant's offer, and they took the risk of a compliance with his promise by Land and the continuance of his agency, for defendant had the right to withdraw his offer to sell at any time before final (664) acceptance of it by payment of the full amount of the purchase money. 39 Cyc., 1194; Winders v. Kenan, ante, 628. The last cited case differs from this one only in the form of the transaction. In that case there was a written option or offer, while in this there was an offer arising out of the deposit of the deed with Land for delivery when the whole of the price should be paid, but subject to withdrawal of the deed or revocation of the offer at any time before its final acceptance, there being no fixed or specific time for plaintiff to pay, and no consideration. The withdrawal of the deed was, at least, some evidence of notice to him that the defendant's offer had had been revoked. There was an effectual way by which plaintiffs could have protected themselves, as well as the defendant, against any default of Land, and that was by tendering the whole amount and demanding a deed, as they had the right to do. "A tender of the purchase money, however, in connection with mutual and concurrent promises by the vendor, means merely a readiness and willingness accompanied with an ability to produce the *Page 540 
money, provided the vendor will concurrently do the act which is required of him; and hence a purchaser in making a tender need not part with the money until he receives the conveyance, and in such a case he may make his offer or tender on condition that the vendor will execute a valid deed to the property bought." 39 Cyc., 1563. Blunt v. Tomlin, 27 Ill. 93;Comstock v. Lager, 78 Mo. App. 390. In the two cases just cited, the Court held that "he who tenders for a deed, need not part with his money till he can touch the deed, so he need run no risk for the safety of his money." If this be true, the defendant insists that the plaintiff should not be allowed to put a risk upon him which they could have avoided so easily by an exact compliance with his offer and by not parting with their money until they received the deed; that by not pursuing this simple method they have brought the trouble upon themselves, and it can make no difference that they did not have all the money when the deed was in Land's possession and at the time he tendered it to them, for that was their misfortune and not defendant's fault. This is a very plausible, if not a Strong position, but we (665) will not now decide whether it is a correct one, as the facts have not been fully developed. It may be the jury will find, upon all the facts and circumstances, that the deed had been withdrawn with plaintiffs' knowledge or with actual or constructive notice to them. If they knew that defendant had revoked the offer when they paid the $35, and that Land's authority had ceased, they should not have paid it, but under the charge of the court this amount was included in the verdict.
It will not be contended that plaintiffs can recover anything if they had notice in fact or in law of the restriction upon Land's authority, or if at the time of the payment of the $215 the deed had, in fact, been withdrawn to plaintiffs' knowledge. Binford testified that Land had it at that time, but defendants should be allowed to show that he did not, if they can.
We think the defendant was unduly handicapped by the ruling of the court excluding evidence as to the withdrawal of the deed, and that the charge was too broad. The case should, therefore, be retried, so that all the facts may be disclosed, and the rights of the parties determined under proper instructions.
New trial. *Page 541