J. L. AND H. H. TATE v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 31 March, 1915.)

1. **Railroads—Crossings—Obstructions—Damages—Equity—Injunctions.**

   Across a certain point on the defendant's railroad track in a certain town a roadway had existed for seventy-seven years, and the company, to enlarge its yard facilities, lay more tracks, etc., acquired at this place 40 acres of land, resulting in stopping and blocking the roadway, for which the plaintiffs bring their action for damages and injunction. The plaintiffs had previously contracted with the vendor of these lands for hauling timber from a tract on one side of the railroad to the vendor's planing mill on the other side thereof, using for that purpose the roadway in question. *Held*, the defendant was liable in damages to the plaintiffs for obstructing the roadway in this manner, and an injunction forbidding the defendant from obstructing it "by leaving box cars or other obstructions thereon," not extending to shifting cars in the manner allowable by law, etc., was properly granted.

2. **Same—Preliminary Negotiations—Notice—Evidence—Merger—Deeds and Conveyances.**

   In negotiating for the sale of lands to a railroad company to be acquired by it for laying more tracks and extending its yard in a town, the vendor refused to make the sale if the company should, in making the extension, obstruct a roadway that for a great number of years had crossed the railroad track at that place, to which the proper official of the company replied, by letter, that there were only two ways in which it could be done, by condemnation or by consent of the supervisors of public roads. The roadway in question had not been dedicated to public use or accepted as such by the proper public officials. Theretofore the vendor of the lands had contracted with the plaintiffs to deliver timber at his mills, with which the obstruction of the roadway would interfere, who bring their action for damages and an injunction. *Held*, though the negotiations leading up to the transaction merged in the deed to the lands accordingly acquired by the defendant railroad company, the letters of the defendant were competent to show that there was a road across its track at the point named which it agreed that it would not attempt to obstruct, except in the manner stated.

3. **Railroad Crossings—Obstructions—Roads and Ways—Public Rights—Interpretation of Statutes.**

   By statutory construction it is held, under the circumstances of this case, that an "established road or way" which a railroad company may not obstruct in crossing it with its tracks extends to those whose use is of a private nature, and not necessarily those dedicated to a public use. Revisal, secs. 2569, 2601, 3753, 2681, 2567 (5). And in such instances, where the rights of a railroad and the rights of the public to the use of their roads or ways conflict, the former must give place to the latter.

4. **Railroad—Public and Private Ways—Grade Crossings—Corporation Commission.**

   Authority is conferred by statute [Rev., 1097 (10)] upon the Corporation Commission to abolish grade crossing by a railroad company when

by the operation of the railroads they become dangerous or inconvenient to the public. traveling along. their highways or private ways.

BROWN, J., dissenting.

APPEAL by defendant from *Ferguson, J.,* at January Term, 1915, of WARREN.

*T. T. Hicks and Tasker Polk for plaintiffs.*
*Murray Allen for defendant.*

CLARK, C. J. This is an action to enjoin, and also to recover damages for, the blocking of a "crossing" by the defendant's train near Norlina, N. C. In February, 1912, the defendant purchased 60 acres of land from W. R. Creed & Co. in order to enlarge its yards at Norlina, and soon thereafter constructed five tracks across the same in pursuance of that purpose.

The plaintiffs, prior to the purchase of this land by the defendant, had a contract with said W. R. Creed & Co. for handling timber on a 2,400-acre tract of land on the south side of the defendant's track. The planing mill of the plaintiffs to which the timber on this 2,400-acre tract was to be hauled is on the north side of defendant's track near the point mentioned in the complaint as "A" Street. The road used for this purpose crossed defendant's track at that point. This was not a public crossing and has not been accepted by the public road authorities, but has been used ever since the railroad was built, and it is also contended that the contract of the plaintiffs with Creed & Co. entitled the plaintiffs to continue to use this crossing and to have the defendant prohibited from obstructing its use.

The jury responded to the issues that the defendant obstructed the crossing as alleged, and assessed the plaintiffs' damages at $150, and the court upon the pleadings and findings forbade and enjoined the defendant from obstructing "the crossing described in the pleadings at the northern terminus of 'A' Street at or near Norlina by leaving box cars or other obstructions thereon; but this shall not prevent the shifting of the cars thereon to the extent that is allowable by law and that will not constitute an obstruction of the same." Damages are allowable for obstruction of highway. *Sloss v. Johnson,* (Ala.) 8 L. R. A. (N. S.), 226, and notes.

The defendant excepts to the evidence as to the existence of the right of the plaintiffs to cross the railroad track at that point.

The testimony shows that there was a road at that point in 1836 when the Raleigh and Gaston Railroad (the predecessor of the defendant) was built, and that it has been in use ever since, and that during all the time since 1836 it has been a material and necessary crossing for a large

number of people, and especially to the tenants, now 39 in number, on the 2,400-acre farm on the south side of the railroad. When the defendant was negotiating the purchase of this 60 acres from W. R. Creed & Co. the said Creeed had contracted with one of the plaintiffs and Mr. Foust to have the timber on this 2,400 acres marketed and to sell to Tate & Foust a half interest therein. This contract was executed 21 November, 1906, and is set out in the record. During the negotiation between Creed & Co. and the defendant in regard to the sale and purchase of the 60-acre tract of land, said Creed & Co. wrote the defendant a letter in which they stated that it was absolutely necessary, before Creed & Co. would sell said 60 acres to the defendant, that it should be understood that "A" Street must be left open, and that they would not agree to a change in this road and crossing which the defendant had proposed. To this the general manager and vice president, C. H. Hix, who was acting for the defendant, replied: "The road or outlet to which you refer is a public thoroughfare and can only be closed by us in one of two ways: condemnation or the consent of the board of supervisors of public roads." These letters were in evidence and are sent up in the record.

It is true that in the deed thereupon made by said W. R. Creed & Co. to the defendant there is no reference to said crossing, but this evidence was competent to show an admission and knowledge on the part of the defendant of the nature of said crossing and that the purchaser could not abolish or obstruct the same without legal condemnation. This is not the case where the preliminary negotiations between the parties are merged in the final contract or conveyance, which is the final conclusion of the contracting parties. But this is the recognition of a status of the surrounding conditions in the acknowledgment that there was a public crossing at that point which the defendant could not and would not attempt to obstruct or abolish.

The duty of railroad companies to so construct their roads as not to interfere with the use of any public road or private way is fully discussed, with the citation of authorities, in *R. R. v. Goldsboro,* 155 N. C., 360, 361 (affirmed on writ of error, 232 U. S., 548); *Cooper v. R. R.,* 140 N. C., at p. 229, and *Wilson v. R. R.,* 142 N. C., at p. 348, and additional authorities are set out in the concurring opinion in *Herndon v. R. R.,* 161 N. C., 659, 660. In the latter case Elliott on R. R., sec. 1138, is cited: "The rule, however, is that a deed to a railroad does not constitute a waiver of a right of way to a private crossing, and the owner whose land has been severed into parcels may claim and enforce the right to a crossing, notwithstanding his unconditional instrument of conveyance." The correspondence above quoted was competent as showing that the defendant's representative had knowledge of the existence of this crossing and stated

that he knew he could not interfere with it except by condemnation or the consent of the road authorities of the county.

Besides, the defendant and its predecessor had maintained that crossing for seventy-seven years, including two years after the deed to it by Creed & Co. of the 60 acres of land in January, 1912, which was accepted after the defendant had expressed its knowledge of the existence of the crossing and that it had no right to abolish it and no intention to do so.

Even if this had been a case where the railroad had been freshly constructed, it was required in crossing "established road or ways to so construct its works as not to impede the passage or transportation of persons or property along the same" (Rev., 2569), and also to "make and keep in constant repair crossings to any plantation road thereon." Rev., 2601; *Raper v. R. R.,* 126 N. C., 566.

The word "ways" in above cited Rev., 2569, is construed to embrace "recognized and customarily used roads and ways less than highways." *Goforth v. R. R.,* 144 N. C., 571. This is cited with approval in *Herndon v. R. R.,* 161 N. C., 660, quoting Rev., 3753, which makes it an indictable offense for any railroad to "fail to make and keep in constant repair crossings to any plantation road thereupon."

A public highway is defined, Rev., 2681. In *Goforth v. R. R., supra,* it is said: "Rev., 2567 (5), does not restrict defendant's duty to crossings by 'public highways,' which might include any road used by the public as a mill and church road or in going to town, as was this road. Revisal, sec. 2569, is still more explicit by placing on the railroad company the duty of not impeding the passage of persons and property by the construction of its road over 'established roads or ways'; that is, as we understand it, recognized and customarily used roads and ways, less than highways. Indeed, we think this would be so, as of common right, independent of any statute, under the maxim, *Sic utere tuo, ut alienum non lædas."*

There is no contention that the correspondence between Creed & Co. and the defendant prior to the conveyance of the 60 acres created this right of way. The deed embraced the contract between the parties, and the preliminary treaty was merged into it. But such preliminary correspondence was competent to show, if it had been necessary, that the defendant was aware of the crossing and expressed its intention not to interfere with it. Certainly the defendant and its predecessor having recognized the existence of this crossing for seventy-seven years, cannot now be heard to deny its existence, or to assert for the first time, in its answer, the right to obstruct it.

This legislation is simply the assertion of the inalienable right of the public that when the public convenience and the convenience of a corporation (which derives its life from public authority) or of any other

enterprise conflict, the convenience of the sovereign, the people, who create corporations and support all business, is paramount. A railroad company itself is chartered for the public convenience, the right to a profit therefrom being incidental.

There is no excuse for such conflict, not only when, as here, the road or way existed before the railroad was built, but on any occasion, for the corporation can always avoid any conflict by putting in a subway crossing either for itself or for the use of the public. In many countries, and in several of our States, grade crossings by railroads are absolutely forbidden. With our steadily increasing traffic, both on railroads and on the roads and ways of the people, this will soon be a necessity here. The Corporation Commission has long had authority to abolish grade crossings. Rev., 1097 (10). When such crossing becomes dangerous or inconvenient to the public, it is the operation of the railroad that makes it so, and as the use of the railroad is in subordination to the rights of the public, instead of taking from the people the use of their roads and ways, the railroad company should avoid such interference at their own expense.

No error.

BROWN, J., dissenting: My views of the rights of the defendant as founded upon well recognized principles of law force me to dissent from the opinion of the Court in this case. If we should seek to dispose of the case upon the basis of public convenience and public benefit alone, in my opinion, the result would be contrary to that reached by the majority of the Court. A private crossing by its very nature serves the few. The railroad company in the exercise of its charter rights, and controlled, as it is, by strict public regulation, must serve the entire public. If the rights conflict, certainly the public interest would be better served by the abolishment of the private crossing. But in this case, as I will show, the abolishment of a private crossing is not the real question presented.

The defendant found it necessary to enlarge its freight yards at Norlina in order to better perform its duties to the public as a common carrier. This required the purchase of additional land adjacent to its tracks and at a point where its yards could be enlarged and extended to the greatest advantage. A tract of land belonging to W. R. Creed & Co., containing 60 acres, located at a point south of the town of Norlina, answered the purpose, and negotiations were opened for its purchase. At the conclusion of the negotiations, which were carried on by C. H. Hix, vice president and general manager, for the railroad, and by W. R. Creed for W. R. Creed & Co., a deed in fee simple for this 60-acre tract

was executed by W. R. Creed & Co. to Seaboard Air Line Railway. This deed contained no exception and no attempt was made to reserve a right of way across the land conveyed.

1. There is no evidence of a contract to keep a private way open across this land. As the *Chief Justice* says: "The deed embraced the contract between the parties, and the preliminary treaty was merged into it." This removes all question of a contract to keep open the private way across the land purchased by the defendant, and destroys the force of *Herndon's case,* 161 N. C., 650, as authority in support of plaintiff's contention. In that case there was evidence of an agreement to keep the way open.

2. There is no question in this case of the right of a railroad to close a public crossing. The following admission appears in the record: "Plaintiffs admit that the said road, the crossing in question, is not a public road and crossing and has not been dedicated to nor accepted by the county commissioners of Warren or board of road commissioners or any other road authorities of Warrenton Township in which it is located, and has not been worked nor kept up by said public road authorities." The cases of *R. R. v. Goldsboro,* 155 N. C., 360, and *Raper v. R. R.,* 126 N. C., 566, relate exclusively to public ways, and this admission makes them inapplicable to the facts of this case.

3. This is not a way of necessity. The owner's land was not severed into parcels. Creed & Co. owned no land on the north side of the railroad, and the tract of land sold to the defendant does not divide part of this land from another part. There is not a line of evidence in the record tending to support the application of the principle that "the owner whose land has been severed into parcels may claim and enforce the right to a crossing notwithstanding his unconditional deed of conveyance," and Elliott on Railroads, sec. 1138, quoted by the *Chief Justice,* does not apply.

4. We come, then, to the real question in the case, Can the owner of land in fee simple close a private way extending across it where it is not a way of necessity and there is no contractual obligation to keep it open? The answer to this question is to my mind so obvious it seems hardly to require the citation of authority. It has been repeatedly answered in the affirmative by this Court. It is so answered in *Boyden v. Achenbach,* 86 N. C., 397, in which *Chief Justice Smith* says: "It would be unreasonable to deduce from the owner's quiet acquiescence— a simple act of neighborhood courtesy, in the use of a way convenient to others, and not injurious to himself, over land unimproved or in woods— consequences so seriously detracting from the value of the land thus used, and compel him needlessly to interpose and prevent the enjoyment of the privilege in order to the preservation of the right of property unim-

paired." In the later case of *S. v. Fisher,* 117 N. C., 733, *Mr. Justice Avery* says: "The continuous use by the people living in the neighborhood or in the State for a period of even sixty years does not deprive the owner of the right to resume control, nor does it devolve upon the properly constituted authorities of the county or the town, as the case may be, the duty, with the incidental expense to the public, of its reparation."

It cannot be doubted that upon these authorities the defendant's grantors, Creed & Co., could have closed this way, unless prevented by contract from doing so. Certainly their grantee by unconditional deed of conveyance has the same right. Can it make any difference in the application of this principle that the grantee is a railroad company? In this respect a railroad is not different from an individual owner. In fact, the law looks with more favor upon the title of a railroad to its property and prohibits the acquisition of title to such property by possession. Revisal, sec. 388. If the defendant should have desired to use this 60-acre tract for a warehouse, could its right to do so have been denied upon the ground that it would interfere with this private way? Could the defendant have been denied the right of closing this private way across its land before the construction of its side-tracks? Its dominion over the property by virtue of its ownership included the right to say that this private way should not be used; and whether it was closed by one obstruction or another or at the time of or after purchase makes no difference in the application of this principle. At the time title was acquired there was no crossing on this tract of land. The defendant's right to close the private way arose immediately and could be exercised whenever the defendant so desired. That it permitted the way to be used for a period of two years could not be deemed a waiver of this right. Revisal, sec. 388; *S. v. Fisher, supra.* Having the right to close this private way across its land, the defendant certainly has the right to place its cars on its side-tracks constructed on this land in shifting and making up its trains, and the plaintiffs, who have no claim of right therein, cannot complain of the incidental interference with a privilege which they exercised at the sufferance of the defendant. The case of *Goforth v. R. R.,* 144 N. C., 569, and the statutes referred to therein have no application. There is a broader question here than the interference with a private crossing created by the condemnation of a right of way in the exercise of the right of eminent domain. This case involves a property right of vital importance to the citizens of this State, and the defendant should not be charged with inexcusably creating a conflict with the plaintiffs.

Whatever may be the law of other States and countries relating to the abolishing of grade crossings, I venture to say that in no State or coun-

168—34

try has it been held that a railroad company should not only permit the use of its property as a private way by the people in the neighborhood when such use interferes with the operation of its trains, but should expend thousands of dollars in carrying the private way under the tracks in its freight yards in order to facilitate such permissive use.

I cannot give my consent to a decision that is so opposed to well established principles of law and justice and the prior decisions of this Court as I understand them.