## A. N. McMILLAN v. ATLANTA AND CHARLOTTE AIR LINE RAILWAY COMPANY.

(Filed 29 November, 1916.)

1. **Railroads — Automobiles — Collisions — Negligence — Proximate Cause— Trials—Evidence—Questions for Jury.**

   Where an intestate is killed by a collision of an automobile in which he was riding, independently driven by another, with defendant's train at a crossing, the question of contributory negligence does not arise, and it is held in this case that the only question presented was, under conflicting evidence, that of proximate cause, for the jury to determine, which was submitted under proper instructions, as to the duty of the engineer to persons on or near the track. *Rosser v. Bynum,* 168 N. C., 340; *Treadwell v. R. R.,* 169 N. C., 394, cited and applied.

2. **Appeal and Error—Instructions—Contentions—Objections and Exceptions.**

   Objection that the trial judge incorrectly stated appellant's contentions should be made at the time to afford opportunity for correction, or an exception thereto will not be considered on appeal.

McMillan v. R. R.

**3. Appeal and Error—Instructions—Objections and Exceptions—Special Requests.**

Ordinarily the presentation of any special theory of a case omitted by the trial judge in his charge should be by special request, and exception to the refusal of the court to so charge, in order to have it reviewed on appeal.

**4. Appeal and Error—Objections and Exceptions—Evidence—Questions and Answers.**

Exceptions to questions asked a witness, which were ruled out, will not be considered when it does not appear what the expected answers would have been.

**5. Railroads—Automobiles—Independently Driven—Crossings—Negligence—Evidence—Proximate Cause—Trials.**

Where intestate is killed by a collision by an automobile in which he was riding, independently driven by another, with a train at a crossing, the negligence of the driver may only be considered upon the question of proximate cause, in the administrator's action against the railroad.

**6. Railroads—Automobiles—Crossings—Signals—Subsequent Charges—Evidence.**

In an action against a railroad company for damages for the alleged negligent killing of plaintiff's intestate in a collision while riding in an automobile with defendant's train at a crossing, evidence of subsequent changes in signals or warnings for additional safety made there by the defendant is incompetent, the case falling within the application of the general rule and not the exceptions.

CLARK, C. J., concurring in result, discusses grade crossings.

ACTION tried before *Carter, J.,* at April Term, 1916, of GASTON.

Plaintiff alleged that his intestate, J. W. Stout, was killed by a collision between an automobile, driven by another, in which he was riding, and a train of defendant at a crossing in East Kings Mountain on 17 August, 1914, and that his death was caused by defendant's negligence. The jury returned the following verdict:

1. Was the plaintiff's intestate killed by the negligence of the servants and agents of the Southern Railway Company, as alleged in the complaint? Answer: "No."

2. What damage, if any, is plaintiff entitled to recover? No answer. Judgment thereon, and defendant appealed.

*Mangum & Woltz, N. F. McMillan for plaintiff.*
*O. F. Mason, George B. Mason, F. M. Shannonhouse and W. S. Beam for defendant.*

PER CURIAM. There was no issue as to contributory negligence, and there was no such question in the case, as it was not tried upon that theory, but rather upon the question of proximate cause. We have

examined the charge carefully and find it to be an accurate statement of the law as applicable to the facts, and it was in exact accordance with the principles as laid down by this Court in *Crampton v. Ivie,* 126 N. C., 894, and *Bagwell v. R. R.,* 167 N. C., 611. See, also, 2 Ruling Case Law, p. 1205. The questions were as to who was negligent and as to whose negligence was the proximate cause of the intestate's death, unaffected by any contributory negligence on his part. This controversy was submitted to the jury clearly and explicitly, with a fair and impartial statement of the several contentions and a correct application of the law to the facts as the jury might find them to be, following closely the above cited cases. The court instructed the jury that "There is no question of contributory negligence in the case, since the law does not impute the negligence of the driver of the automobile to plaintiff's intestate." The rules in regard to positive and negative testimony (*S. v. Murray,* 139 N. C., 540; *Rosser v. Bynum,* 168 N. C., 340), and the duty of the engineer to persons on or near the track of a railroad, were properly stated by the court and with apt illustration. *Syme v. R. R.,* 113 N. C., 558; *Treadwell v. R. R.,* 169 N. C., 694; 33 Cyc., 800. If the contentions of the respective parties were incorrectly given, it was required of plaintiff that the judge's attention should be called to the error in due time, so that he might correct it. *Nevin v. Hughes,* 168 N. C., 477. If the defendant desired that the court submit to the jury any special theory of the case, which was supported by evidence, he should have asked for an appropriate instruction. *Penn v. Ins. Co.,* 160 N. C., 399. But the contentions of the parties were fully and fairly stated to the jury with proper discrimination as to their bearing upon the issues, and plaintiff has no cause to complain on this score.

There are some questions of evidence, but none of them, had there been any error, is of importance enough to warrant a reversal. The judge was correct in all these rulings. As to some of the questions excluded there was no sufficient indication of what the witness would have answered, and others had no substantial relevancy to the case. The evidence admitted on plaintiff's objections was clearly competent. The requests for instructions as to contributory negligence were given in the charge to the extent that plaintiff was entitled to them. The negligence of the driver was permitted to be considered by the jury only upon the question of proximate cause, and this view is sustained by *Crampton v. Ivie, supra,* and *Bagwell v. R. R., supra.* The subsequent changes in signals or warnings for additional safety were properly excluded under the circumstances as proof of negligence. Precautions against the future cannot be considered as an admission of actionable negligence in the past. *R. R. v. Hawthorne,* 144 U. S., 202 (36

L. Ed., 405). The Court said in that case: "A person may have exercised all the care which the law required, and yet, in the light of his new experience, after an unexpected accident has occurred, and as a measure of extreme caution, he may adopt additional safeguards. The more careful a person is, the more regard he has for the lives of others, the more likely he would be to do so, and it would seem unjust that he could not do so without being liable to have such acts construed as an admission of prior negligence. We think such a rule puts an unfair interpretation upon human conduct, and virtually holds out an inducement for continued negligence." 30 Minn., 465, 468. The same rule appears to be well settled in England. In a case in which it was affirmed by the Court of Exchequer, *Baron Bramwell* said: "People do not furnish evidence against themselves simply by *adopting a new plan* in order to prevent the recurrence of an accident. I think that a proposition to the contrary would be barbarous. It would be, as I have often had occasion to tell juries, to hold that, because the world gets wiser as it gets older, therefore it was foolish before." *Hart v. R. R.,* 21 Law Times (N. S.), 261, 263. The Court also said in that case (*R. R. v. Hawthorne, supra*): "Upon this question there has been some difference of opinion in the courts of the several States. But it is now settled, upon much consideration, by the decisions of the highest courts of most of the States in which the question has arisen, that the evidence is incompetent, because the taking of such precautions against the future is not to be construed as an admission of responsibility for the past, has no legitimate tendency to prove that the defendant had been negligent before the accident happened, and is calculated to distract the minds of the jury from the real issue, and to create a prejudice against the defendant," citing many cases, and, among others, *Morse v. R. R.,* 30 Minn., 465; *Corcoran v. Peekskill,* 108 N. Y., 151; *R. R. v. Clem,* 123 Ind., 15. Part of the above quotation was taken from the opinion of that learned and able jurist, *Judge Mitchell,* delivered by him in *Morse v R. R., supra.* We adopted the same rule in *Lowe v. Elliott,* 109 N. C., 581, and approved what is above quoted from opinion of *Mitchell, J.,* in *Morse v. R. R.,* citing three other cases, *Dougan v. Transportation Co.,* 56 N. Y., 1; *Sewell v. Cohoes,* 11 Hun., 626, and *Baird v. Daily,* 68 N. Y., 547. The case of *Lowe v. Elliott* was approved in *Myers v. Lumber Co.,* 129 N. C., 252; *Aiken v. Mfg. Co.,* 146 N. C., 324; *Tise v. Thomasville,* 151 N. C., 281; *Boggs v. Mining Co.,* 162 N. C., 393. We do not say that there may not be peculiar cases in which such testimony may be relevant, but this is not one of them. *Lowe v. Elliott, supra.* We have admitted such evidence under special circumstances. *Pearson v. Clay*

McMILLAN v. R. R.

*Co.,* 162 N. C., 224, and in *Boggs v. Mining Co., supra,* it was stated that the general rule as laid down in *Lowe v. Elliott* is subject to certain exceptions, which do not extend, as we have said, to this kind of case.

We have considered the record in this appeal most carefully in view of the commendable zeal of and the able presentation of it here by counsel for plaintiff, but we have been unable to conclude otherwise than that the learnèd judge who presided at the trial committed no error, but in every respect thoroughly safeguarded the plaintiff's interests.

No error.

CLARK, C. J., concurs that the result may be in accordance with the precedents, but deems that the reasoning therein cannot be sustained, and holds that such ruling should be changed either by the Court or by legislation. The public roads are the property of the people of the State, who are entitled to the free and safe use thereof. The operation of numerous fast moving and dangerous railroad trains crossing these public roads on the same grade is a most serious interference with the safe and free use of the public roads as the people were aforetime accustomed to use them and have a right to do still. The cause of the death of these two men, as of so many others, was the negligence of the defendant in crossing the public road on the same grade, without even gates or an automatic electric gong operated by the wheels of an approaching engine.

Throughout Europe the crossing of public roads by railroads on the same grade is utterly forbidden. It has also been forbidden in many States of this country, and the Supreme Court of the United States has held that even where railroads have been permitted to cross the public roads on a grade, the Legislature of any State has the right at any time to require a change so that every railroad track must cross either below or above the public road, and that this change can be required at the expense of the railroad companies, who for their own profit interfere with the traffic and travel along the public roads of the country, and that the permission heretofore accorded railroad companies to cross the public roads on a grade is a mere revocable license and not an irrevocable contract. *R. R. v. Bristol,* 151 U. S., 556, which has been cited and followed in *R. R. v. Kentucky,* 161 U. S., 696; *R. R. v. Defiance,* 167 U. S., 99; *Wheeler v. R. R.,* 178 U. S., 324; *R. R. v. McKeon,* 189 U. S., 509; *R. R. v. Wheeler,* 72 Conn., 488; *Norwood v. R. R.,* 161 Mass., 265; *Chicago v. Jackson,* 196 U. S., 502, and many other cases.

The above decisions have been quoted, and the necessity of preserving the lives of our citizens from this deadly menace caused by the

increasing traffic on our railroads and public roads, and the greater size and speed of the engines, has been called to the attention of the railroad companies in an opinion by the writer in *Cooper v. R. R.,* 140 N. C., at p. 229; and also the necessity of having automatic gong annunciators at every grade crossing until such time as the railroads can with due diligence abolish all grade crossings. This was done at Fall Term, 1905—eleven years ago.

In view of the increasing number of our citizens who are slain every year by the refusal of the railroad corporations to provide for the avoidance of loss of life at grade crossings, the matter was again called to their attention by a concurring opinion in *Wilson v. R. R.,* 142 N. C., 349, at Fall Term, 1906, in which it was shown from the published official reports of the United States Government that nearly 10,000 people were killed annually by the railroads of the country and nearly 90,000 more killed and wounded, and attention was again called to the above quoted cases from the United States Supreme Court. The matter was again reviewed and called to the attention of the public and of the railroads in another opinion in *Gerringer v. R. R.,* 146 N. C., at pp. 35-37, at Fall Term, 1907, showing that the number killed and wounded by railroads in this country had then risen to 105,000. In the nine years since there has been a further increase. Above U. S. cases were cited *R. R. v. Goldsboro,* 155 N. C., 365, which was affirmed on writ of error, 232 U. S., 548.

No attention whatever has been paid by these corporations to the decisions of the United States Supreme Court and to other courts along this line. It is true that as a result of the above decisions in this Court the Legislature of 1907, ch. 469, empowered (but did not require) the Corporation Commission, in their discretion, to abolish grade crossings and to tax the costs thereof, in their discretion. But this has not yet brought about any perceptible diminution in the evil. *Tate v. R. R.,* 168 N. C., 527.

It is within the power of this Court, as it certainly is within the power of the Legislature, to hold that whenever a citizen in the use of the public roads, which is his inherited right, is killed or injured by a railroad train it shall be an irrebuttable presumption of negligence on the part of the corporation.

As was pointed out in the concurring opinion in *Gerringer v. R. R.,* this Court in the *Greenlee* and *Troxler cases,* 122 N. C., 977, and 124 N. C., 189, in the enforcement of the constitutional guarantee of the protection of life and limb, held that when injury or death is caused by the absence of automatic car couplers it is irrebuttable evidence of negligence, and that the corporations are liable for all deaths and injuries sustained from the lack of them. Automatic car couplers had

long been known, but with the same disregard of the safety of the lives and limbs of their employees, these and other safety appliances were not in use. Now such negligence is punishable by act of Congress, 1893, ch. 196; 3 U. S. Compiled Statutes, 3174; also by a similar holding of this Court as to the lack of a block system (*Stewart v. R. R.,* 137 U. S., 687), which was repeated and reiterated in the same case (141 N. C., 253). As a result such system is now required by statute also. Laws 1907, ch. 469, sec. 1 (b).

More recently both State and Federal governments have further intervened to protect employees by requiring other safety appliances, and by providing that contributory negligence should not be a defense, but, if shown, the damage should be apportioned. In every instance there has been an almost total lack of safety appliances and of regard on the part of the railroad managements for the safety and convenience of the employees and of the patrons who furnish the means from which these corporations draw their profits. As to the convenience of the public, the authority conferred on the Corporation Commission to require union stations has been as little effective of benefit to the public as the authority to abolish grade crossings. The story of railroad operations in this country has shown an indifference to the safety of the public and of their employees and for the convenience of the public that has not been overcome except by an imperative statute, or a decision of the courts, compelling respect for the rights of the public and employees. Recently in our State a statute enforced for the protection of the public and employees the limitation of the hours of labor for telegraph operators and other railroad employees, and more recently the Federal Congress has still further limited the hours of labor. Laws 1907, ch. 456; Act of Congress, 4 March, 1907, and October, 1916.

In North Carolina at present there are nearly 5,000 miles of railway track in operation, and the annual receipts of railroad companies in this State are over $36,000,000—very many times the total receipts of the State Government, including the counties and towns. Certainly whatever the net profits of these carriers, there would be abundance for all bona fide stockholders notwithstanding the expense of abolishing grade crossings, furnishing safety appliances, union stations (*S. v. R. R.,* 161 N. C., 270), and all other proper requirements for the safety and convenience of the public.

A recent investigation showed that three-fourths of the stock of one of the great corporations operating in this State was owned in England, and we know that the ownership and control of all railroad corporations is in nonresident capitalists. The presidents and superintendents are merely overseers of the property for alien and other nonresident owners

McMillan *v.* R. R.

whose wishes and supposed interests they must regard, and not the safety, convenience, and wishes of the people of North Carolina, from whom these corporations derive their incomes. The public cannot expect such betterments as are required for their safety in traveling the public roads, or on the trains, unless by statutory enactments or decisions of the courts, as in the *Greenlee* and *Troxler cases.* Nothing has been done, and nothing will be done, by the nonresident management of these great properties except under compulsion of statutes or decisions of the courts. Experience in all these years has proven this.

The State and Federal Constitutions and the Declaration of Independence declare that all government "originates from the people; is founded upon their will only, and is instituted solely for the good of the whole." The protection of life and person can be had only by the exercise of the sovereign power of the people, whether by legislative enactment or the decisions of the courts. This Court, as in the *Greenlee* and *Troxler cases,* should now hold that in all cases where citizens traveling · along the public road are killed or injured by railroad trains at grade crossings, the corporations should be held liable, and that in such cases contributory negligence is not admissible as a defense, after the action of other States, the decisions of the Supreme Court of the United States, and the reiterated warnings of this Court as far back as 1905. The wholly avoidable slaughter and maiming of our citizens at such crossings is called to the attention of the General Assembly, shortly to assemble, for such action as the members may deem is requisite for the protection of their constituents. The proximate and irrebuttable cause of every killing and injury at a railroad crossing is the negligence of the railroad company in violating the immemorial right of the public to the safe use of their own roads.

At very man places grade crossings can be abolished readily and at small expense, and until this is done (and at all other crossings) there should be gates or electric gongs, which last should be installed also at all stations. In the absence of such protection the railroad company is guilty of negligence, which is, in the case of the absence of car couplers and the block system, the irrebuttable proximate cause of death or injuries accruing to our people who are using their own public roads as they have a right to do.