# WHEELER *v.* NEW YORK, NEW HAVEN AND HART-FORD RAILROAD COMPANY.

## ERROR TO THE SUPREME COURT OF ERRORS OF THE STATE OF CON-NECTICUT.

No. 534. Submitted May 14, 1900. — Decided May 28, 1900.

Under a statute of Connecticut, a contract was entered into between the city of Bridgeport and a railroad company providing that the city should pay one sixth of the expense of abolishing grade crossings, and also of increasing the tracks of the company from two to four. Defendants, whose lands were sought to be condemned for this purpose, objected upon the ground that the agreement of the city to pay one sixth of the expense of increasing the number of tracks was a practical donation by the city to the railroad company in violation of the state constitution, and was also a taking of their property without due process of law under the Fourteenth Amendment to the Federal Constitution. *Held,* that the Supreme Court of the State having decided that the right to condemn the land did not depend upon the obligation of the city to pay a part of the expenses, and that the defendants could not prevent a condemnation by showing that the company might not afterwards obtain a reimbursement from the city, and also that the defendants, not alleging that they were taxpayers or specially interested, were not in any position to question the validity of the proceedings, it followed that their property was not taken without due process of law.

THIS was a motion to dismiss the writ of error, and in default thereof to affirm the judgment of the Supreme Court of Errors of Connecticut.

The case originated in an application by the railroad company to the judge of the Superior Court to appoint appraisers to estimate the damages that might arise to the plaintiff in error from the taking of certain real estate in the city of Bridgeport, for the purpose of carrying out an agreement between the railroad company and the city of Bridgeport for the abolition of grade crossings. This agreement, which was entered into under the provisions of an act of the General Assembly, " providing for the abolition of grade crossings in Bridgeport," provided the manner, plans, method and time in

which the grade crossings should be abolished, and the proportion of the cost thereof to be borne by the city of Bridgeport and the railroad company — the proportion of such cost to be paid by the city being one sixth and that by the railroad company five sixths, provided the total cost to be paid by the city should not exceed the sum of four hundred thousand dollars.

A demurrer to the application of the railroad company having been overruled, and a special defence in the answer having been stricken out as irrelevant and impertinent, an order was made appointing the appraisers. An appeal was taken to the Supreme Court of Errors, which affirmed the judgment of the judge of the Superior Court, and defendant sued out this writ of error, which defendant in error moves to dismiss for want of jurisdiction, or to affirm, upon the ground that the question upon which the jurisdiction depends is frivolous.

Mr. *William D. Bishop, Jr.*, for the motion.

Mr. *Robert E. DeForest* and Mr. *George P. Carroll* opposing.

Mr. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

Plaintiffs assign as error that, in view of the fact that, by the agreement between the city and the railroad company, it was provided that the city should pay one sixth of the entire cost of the land required *for the construction of a four-track road*, as well as of all damages resulting from the changes of grade, there would be a reimbursement to the company for expenses in doing work and acquiring land not necessary or germane to the work of eliminating crossings at grade of the two present main tracks over the highways; and that, under these circumstances, the condemnation of defendants' property will be in furtherance of a scheme, whereby the city of Bridgeport will contribute and donate to such company the credit, money and property of the city, and of its property owners and taxpayers, in aid of the railroad company, contrary to the provisions of the twenty-fifth amendment to the constitution of

the State of Connecticut, and the taking and condemnation of said Wheeler and Howes' said property will be a taking thereof without due process of law, etc.

1. We cannot say that there is no Federal question in this case. In their demurrer to the application of the railroad company, plaintiffs in error relied upon the unconstitutionality of this special act of the Connecticut legislature as contravening the twenty-fifth amendment to the constitution of the State, and the Fourteenth Amendment of the Federal Constitution. The amendment to the state constitution provides as follows: " That no County, City, Town, Borough, or other municipality, shall ever subscribe to the capital stock of any railroad corporation, or become a purchaser of the bonds, or make donation to, or loan its credit, directly or indirectly, in aid of any such corporation."

The claim was, not that it was unconstitutional for the city of Bridgeport to pay for a part of the work for grade crossing elimination, but that the pay for work for the benefit of the company, in the construction of a four-track road, which was not necessary or germane to the work of grade crossing elimination, would be contrary to the above amendment to the state constitution ; and therefore that, as the land of Wheeler and Howes was to be taken to carry out a part of the project, to be paid for in part by the city, not necessary or germane to the work of grade crossing elimination, their property would be taken without due process of law. The substance of the defence seems to have been that the land was not taken solely for the purpose of abolishing grade crossings, but also for the purpose of laying two extra tracks, and making the road through the city of Bridgeport a four-track road instead of an ordinary double track. It seems that the railroad company had laid a complete four-track road all the way from New York to New Haven, except in that section which lay in the city of Bridgeport—a distance of more than four miles, and crossing at grade twenty-four streets, some of them the most frequented in the whole city. There is no doubt that the special act did authorize an increase in the number of tracks, and there was some reason for saying that in requiring the city to pay one sixth of

the expenses incurred for this purpose, it was making a donation in aid of the railroad company in violation of the twenty-fifth amendment to the state constitution, and as Wheeler and Howes were property owners and taxpayers of the city, they were incidentally affected by this, and therefore their lands were illegally taken.

2. But assuming that there was color for the motion to dismiss, we are clearly of the opinion that the decree of the Supreme Court of Errors should be affirmed. That court had already decided, not only that the legislature might compel the removal of grade crossings and the payment of the .expenses therefor, either by the railroad company or by the city, or by both, *Woodruff* v. *Catlin*, 54 Conn. 277, (a case arising under a former act,) and that a statute compelling the removal of grade crossings, as well as imposing upon the railroad the entire expense of the change of grade, was constitutional, *N. Y. & N. E. R. R. Co.'s Appeal*, 58 Conn. 532; *N. Y. & N. E. R. R.* v. *Bristol*, 151 U. S. 556; but the very act in question in this case has also been held to be constitutional. *Mooney* v. *Clark*, 69 Conn. 241. That court also held in this case that, whether the land be taken only for the purpose of abolishing grade crossings or to straighten its line and construct additional tracks, the taking is in either case for railroad purposes and for a public use. It also held that the right of the railroad company to condemn defendants' property did not depend upon the validity of any part of the special act of 1895, since by the resolution of the board of directors of the company in July, 1896, and by the approval of the commissioners in June, 1897, both of which were alleged in the application, the railroad company was entitled under section 346 of the General Statutes to take the land for the uses named in the resolution.

The plaintiffs in error contended before the Supreme Court of Errors, as they contend here, that the agreement and order made in pursuance thereof, imposing upon the city a proportion of the expense of constructing the two additional elevated tracks, not necessary to the work of eliminating grade crossings, violated the state constitution as well as the Constitution of the United States. "But," said the court, "if the railroad company

desires to take this property as one step in carrying out the proposed plan, the defendants cannot prevent it upon the ground that the company may not afterwards be able to obtain reimbursement from the city. The ability of the defendants to obtain payment of their damages does not depend upon the right of the railroad company to collect a part of it from the city. Before taking the land the company must compensate the defendants." It was further said : That even if the employment of appraisers had established the liability of the city to pay a proportion of the expense of laying the additional tracks, such a defence was not open to the defendants, because they have not alleged that they were taxpayers or had any right or authority to represent the city in such proceedings, or that they will be injured in any respect from the payment by the city of its part of the expense of the work as fixed by the agreement and order. " But," says the court, " the appointment of appraisers in this proceeding does not affect the question of the liability of the city to pay that part of the expense ordered by the commissioners. The right of the railroad company to have appraisers appointed and to take this property does not depend upon the obligation of the city to pay a one sixth part of the expense of the whole, or of any portion of the work of this undertaking. The two purposes of the act of 1895 were : First, the removal of all existing grade crossings in Bridgeport, and the construction, in the most feasible manner, after considering the interest of the public, the rights, responsibilities and duties of the railroad company, and of the city, and the rights of other parties concerned, of a four-track railroad through the city, in such a way as to avoid crossing any highway at grade; and, second, a just apportionment of the cost among those who ought to bear the expense of performing the work in the manner determined. These two purposes are so far distinct and separable, and are so intended to be by the act, that neither the right of the railroad company to perform the work according to the plans approved by commissioners, nor the power of the commissioners to compel its performance, depends upon a previous apportionment of the expense between the parties who should bear it. Section 12, as we have already said, provides that if no agreement shall have been made as authorized by section 2,

the commissioners, after the work shall have been completed, shall apportion the entire expense among the proper parties."

The court intimated no opinion as to whether the agreement and order fixing the proportionate part of the entire expense to be paid by the city was of doubtful validity. It thought the question was one which could not properly be raised in this proceeding.

The court held in substance (1) that the right to have appraisers appointed did not depend upon the obligation of the city to pay a part of the expense, and that defendants could not prevent a condemnation by showing that the company might not afterwards be able to obtain reimbursement from the city; and (2) that the defendants, not alleging that they were taxpayers, or specially interested, were not in a position to question the validity of the proceedings. If this be so, it requires no argument to show that they are not in a position to contend that their property has been taken without due process of law. If the court had gone farther, and held that the taking of defendants' property for the purpose, not only of abolishing grade crossings, but of enabling the railroad company to lay additional tracks, was not a violation of the twenty-fifth amendment to the state constitution, that would have been exclusively a local question, and would have involved no question of an unlawful taking of defendants' property within the Fourteenth Amendment.

If the fact that the city of Bridgeport contributed to the expense of abolishing grade crossings, and incidentally thereto, to the construction of additional tracks, does no violence to the constitutional provision that no city shall make a donation in aid of a railroad corporation, as held by the Supreme Court of Connecticut, much less does it make a case of taking the property of petitioners, whether as property owners or as taxpayers, without due process of law.

The decree of the Supreme Court of Errors of the State of Connecticut is, therefore,

*Affirmed.*

MR. JUSTICE GRAY did not sit in this case and took no part in the decision.