E. G. GOFORTH v. SOUTHERN RAILWAY COMPANY.

(Filed 14 May, 1907).

**Railroads—Crossings—Neighborhood Roads—Negligence—Damages.**
Under Revisal, secs. 2567 (5) and 2569, and independently as of common right, it was error in the Court below to sustain a motion as of nonsuit, under the statute, on competent evidence from which the jury could have found that, if defendant's crossing over a neighborhood road had not been negligently left in a dangerous condition, plaintiff would not have been injured by the slipping and falling thereon of the mule upon which he was riding.

CIVIL ACTION, tried before *Guion, J.,* and a jury, at January Term, 1907, of the Superior Court of McDowell County. From a judgment for the defendant, plaintiff appealed.

*J. W. Pless* and *Hudgins, Watson & Johnston* for plaintiff.
*S. J. Ervin* for defendant.

CLARK, C. J.   The plaintiff was thrown and injured by his mule slipping and falling while plaintiff was driving him across the defendant's track at Gardner's Crossing, a flag station on defendant's road.   The defendant had always kept up this crossing from the time the road was built by having planks nailed down between the rails and a plank on the outside of each rail.   But a few weeks before this injury the defendant, in working its track, had torn up these planks and had not put them back.   There was evidence from which the jury could have found that if the crossing had been restored to its former condition the slipping of the mule would not have happened, and that the plaintiff would not have been thrown and injured but for the dangerous condition in which the crossing was left after this working of the defendant's road, by reason of the fresh dirt thrown up

and the absence of planks. This being a nonsuit, the evidence must be taken in the most favorable light for the plaintiff.

The road the plaintiff was traveling was not a public highway, but a neighborhood road, traveled by the people of that neighborhood as a mill and church road, and had been so used for "probably one hundred years." It was also used by them in going to Marion, the county-seat, and connected two public roads which were three miles apart. The crossing was, as has been said, a flag station. The chief contention of the defendant is that this was not a public road, and hence it was not the duty of the railroad company to keep the crossing in a safe condition. Revisal, sec. 2567 (5), requires railroads to keep the crossing of "any street, highway, plank road, and turnpike" in such condition "as not unnecessarily to impair its usefulness." Section 2569 requires railroads in crossing "established roads or ways," to so construct its works as "not to impede the passage or transportation of persons or property along the same."

In *Raper v. Railroad,* 126 N. C., 563, it is held that railroad companies must maintain crossings "as safe and convenient to the public as they would have been had the railroad not been built." It is true that in that case the crossing was over a public highway. But Revisal, sec. 2567 (5), does not restrict the defendant's duty to crossings of "public highways," but uses the broader and generic term "highways," which might include any road used by the public as a mill and church road and in going to town, as was this road. Revisal, sec. 2569, is still more explicit by placing on the railroad company the duty of not impeding the passage of persons and property by the construction of its road over "established roads or ways"—that is, as we understand it, recognized and customarily used roads and ways, less than highways. Indeed, we think this would be so, as of common

right, independent of any statute, under the maxim *sic utere tuo, alienum non lædas.*    The General Assembly, in conferring the right of eminent domain upon railroad com-panies, does not give them the right to interfere with the free passage of the people along their neighborhood roads. It does not authorize the railroads to block them up or make them unsafe.   The right of condemnation does not include the taking away of such neighborhood facilities as the people may be able to have in going to worship God, to grind their bread, or visit their county town, when the sparseness of population, or the condition of the county treasury, or econ-omy of its officials has prevented their having roads of the dignity of public highways.   We are confirmed in this view by the fact that Revisal, sec. 3753, makes it an indictable offense for any railroad to "fail to make and keep in constant repair crossings to any plantation road thereupon."    Cer-tainly, then, a mill and church road must be within the terms "highways, established roads and ways."

It is just that the crossings necessitated by the construction and operation of a railroad should be kept in a safe condi-tion by it.    The power of the Legislature to impose upon the railroad company the duty of making and keeping in repair all crossings is unquestionable.    In Massachusetts, Connecticut, and to some extent in other States, railroads have been now required by statute to change their grades so as to pass under or over all crossings and to make the change entirely at their own expense   These statutes have been held constitutional both by the courts of their own States (see cases cited, 140 N. C., 229) and in the Federal Supreme Court.   *Railroad v. Bristol,* 151 U. S., 556; *Railroad v. Kentucky,* 161 U. S., 696; *Railroad v. Defiance,* 167 U. S., 99; *Wheeler v. Railroad,* 178 U. S., 324; *Railroad v. McKeon,* 189 U. S., 509.

Indeed, the crossing being upon the defendant's right-of-way, neither the plaintiff nor any one else could enter there to keep it in condition. That might have been unsafe for passing trains. Only the defendant could be expected or permitted to work on the crossing. The defendant itself had recognized that it was its duty to keep this crossing in repair and had done so till but a few weeks before this, when the company had torn it up in repairing its own road and had failed to again put the crossing in its former state. Whether this new condition was negligence, and was the proximate cause of the injury, and whether the plaintiff's negligence contributed to the injury or whether the injury was purely accidental, without fault of any one, are matters which should have been submitted to the jury. The burden of proving contributory negligence is upon the defendant, who has pleaded it in his answer. Revisal, sec. 483. The nonsuit is set aside and

Reversed.