MARY VIRGINIA MOORE, ADMINISTRATRIX OF J. R. MOORE, v. ATLANTIC
    COAST LINE RAILROAD COMPANY; FRANK MOORE v. ATLANTIC
    COAST LINE RAILROAD COMPANY; AND D. W. ETHERIDGE, TRAD-
    ING AS THE NEW BAKERY, v. ATLANTIC COAST LINE RAILROAD
    COMPANY.

(Filed 20 May, 1931.)

1. **Railroads D b—Evidence of contributory negligence of plaintiff in
crossing tracks held insufficient to bar recovery as matter of law.**

   Where in an action against a railroad company to recover damages re-
   sulting from a collision at a public grade crossing the evidence tends
   to show that the driver of the truck stopped within about sixty feet of
   the track and he and an occupant therein looked and listened, and again
   stopped when from seven to fourteen feet of the track, and, failing to see
   or hear an approaching train, drove upon the track without further
   precaution, that the truck stalled upon the track and was hit by defend-
   ant's train within twelve or fourteen seconds, that there were two mounds
   between the highway and the crossing between eight to fifteen feet from
   the tracks, one mound being from ten to twelve feet high and preventing
   a clear view of the track, that the driver could see up the track in the
   direction from which the train came for one-third of a mile, and that
   at the crossing there were boards projecting two or three inches above
   the rails, is *Held:* insufficient to establish contributory negligence on
   the part of the driver as a matter of law, the issue being for the jury,
   and defendant's motion as of nonsuit was properly denied.

2. **Trial D a—Upon motion of nonsuit only the evidence tending to
establish the plaintiff's cause of action will be considered.**

   Upon a motion of nonsuit the evidence favorable to the plaintiff will
   be taken as if established to the satisfaction of the jury, and conflicting
   or contradictory evidence offered by the plaintiff will not be considered in
   passing upon the sufficiency of the evidence. C. S., 567.

3. **Railroads D b—In moment of peril the plaintiff will not be held to
degree of care for own safety required under ordinary circumstances.**

   Where in a few seconds of peril caused by the unexplained stopping of
   the engine of the plaintiff's truck on defendant's railroad track, with
   evidence tending to show that the defendant was negligent in causing a
   collision at a grade crossing, the mere fact that the driver of the auto-
   mobile unsuccessfully endeavored to start his engine instead of seeking
   safety by jumping therefrom, is not held to bar recovery on the issue
   of contributory negligence upon which the defendant based his motion
   as of nonsuit.

4. **Same—Person crossing track and train crew are required to use care
of ordinarily prudent man under the circumstances.**

   One who drives across a railroad track at a public crossing and the
   employees on the defendant's train are mutually held to the degree of care
   required under the rule of the ordinarily prudent man under the circum-
   stances to avoid receiving or inflicting injury.

5. **Same—Railroad company is under duty to keep public crossing in reasonably safe condition.**

It is the duty of a railroad company to keep its right of way at a public crossing in a reasonably safe condition and one using a crossing without previous knowledge of its condition may assume that the railroad company had performed this duty.

6. **Appeal and Error F a—Where there is no exception to the charge it will be presumed correct.**

Where the charge of the court to the jury is not excepted to it will be presumed on appeal that the law was correctly explained.

STACY, C. J., and BROGDEN, J., dissent.

APPEAL by defendant from *Moore, Special Judge,* at October Term, 1930, of HALIFAX. No error.

These are actions to recover damages for the death of J. R. Moore, for personal injury to Frank Moore, and for the destruction of a truck owned by D. W. Etheridge, alleged to have been caused by the negligence of the defendant.

J. R. Moore, the intestate, as a salesman for D. W. Etheridge, was engaged in selling bread, cakes, and other products of a bakery, which he hauled in his employer's truck. Frank Moore, 23 years of age, was his son. On 24 January, 1929, these two left South Rosemary at 10:30 a.m., intending to go to Weldon and other places. At the request of his father Frank Moore drove the truck—a Dodge truck of three-quarter-ton capacity. There was a door on each side of the seat, the driver sitting at the left, his father at the right. After going to South Weldon and Garysburg they continued their journey. They traveled on a State highway until near the place where a bridge over the railroad tracks was under construction, and then they turned to the left into a road which crossed the defendant's tracks at a distance of 415 feet from the highway. This is a main line and has double tracks. The truck approached the track from the east, and when the front wheels were between the rails of the east track the engine stalled. The defendant's train coming from the south struck the truck, demolished it, killed the intestate, and seriously injured Frank Moore. Pleadings were filed, in which the plaintiffs alleged negligence and resultant damages, the defendants denying liability and pleading contributory negligence on the part of the occupants of the truck. In each case issues of negligence, contributory negligence, last clear chance, were answered in favor of the plaintiffs, and damages were assessed. Judgment accordingly, and appeal by defendant.

*Parker & Allsbrook for plaintiffs.*
*Thomas W. Davis, F. S. Spruill and Dunn & Johnson for defendant.*

ADAMS, J. During the trial several exceptions were entered of record, but all have been abandoned except the one relating to the defendant's motion for nonsuit. This motion was based, not upon the ground that there is no evidence of the defendant's negligence, but upon the sole contention that the evidence offered by the plaintiffs shows such contributory negligence on the part of the occupants of the truck as will bar recovery in all the cases. In maintaining this position the defendant relies chiefly, but not exclusively, on the testimony of Frank Moore, who drove the truck at the time of the collision. Construed most favorably for the plaintiffs, their evidence tends to establish the following circumstances.

The crossing at which the collision occurred has been used by the public and kept up by the defendant for many years. On the track there were boards above which the rails projected two or three inches. The day was cloudy. The road between the highway and the crossing is a "lane with woods all the way" to a point within nine feet of the road-bed. There were two mounds between the highway and the crossing. The driver of the truck entered this "lane," and stopped sixty or seventy feet from the railroad track, lowered the window and "looked right and left up and down the track and did not hear or see anything." The mound on the left prevented him from seeing very far. It was ten or twelve feet high. There was another mound six feet high. Estimates of its distance from the railroad vary from eight to fifteen feet. The driver testified that when within ten or fifteen feet (he afterwards said seven or eight feet) of the track he stopped, listened, and looked again to the right and left. His father looked also. For one-third of a mile they had a view of the track in the direction from which the train came; but they neither saw nor heard the train at that time. After looking and listening, when within eight or nine feet of the crossing, they drove upon it without again looking for the train. The front wheels passed over the first rail and the engine stopped running. The driver "pulled down on the starter" several times trying to put the engine in motion. Within twelve or fourteen seconds the engine struck the truck. The driver saw the train one or two seconds before the collision. He did not hear the sounding of the whistle, the ringing of the bell, or the noise of the cars.

There is abundant evidence in contradiction. Indeed, other testimony introduced by the plaintiffs is in some respects inconsistent with that of Frank Moore. In other respects it corroborates him. But on a motion for nonsuit the testimony of Frank Moore must be accepted as if established to the satisfaction of the jury. No authorities need be cited in support of this elementary proposition. Tested by this principle, are we justified in holding as a matter of law that the negligence of those who occupied the truck is a bar to the plaintiff's recovery of dam-

ages? For the purposes of the present discussion we may assume that Etheridge owned the truck and that the occupants had it in charge as his agents and were acting within the scope of their employment. There is evidence that Frank Moore was subject to the control and direction of his father.

When approaching a public crossing the employees in charge of a train and a traveler upon the highway are charged with the mutual and reciprocal duty of exercising due care to avoid inflicting or receiving injury, due care being such as a prudent person would exercise under the circumstances at the particular time and place. "Both parties are charged with the mutual duty of keeping a careful lookout for danger and the degree of diligence to be used on either side is such as a prudent man would exercise under the circumstances of the case in endeavoring to perform his duty." *Improvement Co. v. Stead,* 95 U. S., 161, 24 Law Ed., 403, cited in *Cooper v. R. R.,* 140 N. C., 209. On reaching the crossing and before attempting to go upon it, a traveler must use his sense of sight and hearing—must look and listen for approaching trains if not prevented from doing so by the fault of the railroad company; and this he should do before entering the zone of danger. *Johnson v. R. R.,* 163 N. C., 431; *Holton v. R. R.,* 188 N. C., 277; *Butner v. R. R.,* 199 N. C., 695. This, as we understand it, is the prevailing rule. At any rate it is observed and has often been applied by this Court.

We are referred to *B. & O. Railroad Company v. Goodman,* 275 U. S., 66, 72 Law Ed., 167, in which it is said: "When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. He knows that he must stop for the train—not the train stop for him. In such circumstances it seems to us that if a driver cannot be sure otherwise whether a train is dangerously near he must stop and get out of his vehicle, although obviously he will not often be required to do more than to stop and look. It seems to us that if he relies upon not hearing the train or any signal, and takes no further precaution, he does so at his own risk." The "standard of conduct" there set up was on admitted or undisputed facts: when forty feet from the crossing Goodman reduced the speed of his truck from ten or twelve miles an hour to five or six, but he did not stop, though his view was obstructed; and in the opinion of the Circuit Court of Appeals it is suggested that he neither looked nor listened before going on the track. It seems that he neither stopped, looked, nor listened; but, heedless of danger, drove directly in front of an oncoming train. 10 Fed. (2d), 58.

In the case before us, if we treat the testimony of Frank Moore with its legitimate inferences as established or undisputed, we have this situation: when sixty or seventy feet from the crossing he stopped the truck, looked and listened; again within seven or eight feet of the rails

he stopped and he and his father looked to the right and left, and listened; and at that time, according to his testimony, the train was not within the range of his view, which extended one-third of a mile down the track. Is it logical to conclude as a necessary inference of law that he was negligent in attempting to cross the track under the circumstances? It is said he should have looked down the track when traversing the intervening distance of seven or eight feet; but he had just looked and apparently the way was clear. He was not required to look in that direction continuously, because his "attention was rightly directed elsewhere." *Lee v. R. R.,* 180 N. C., 413, 417. The crossing was in "bad condition" and called for the exercise of forethought and perhaps of rather tense effort, though of brief duration. This is obvious from the sequel. Under conditions disclosing inconsistent testimony among the plaintiffs' witnesses, whether those who had control of the car were negligent in going on the railroad track was a mixed question of law and fact, properly submitted to the jury by whose finding of facts the standard of conduct was to be measured. *Osborne v. R. R.,* 160 N. C., 310. It may be noted here that the facts upon which *Harrison v. R. R.,* 194 N. C., 656, was decided were similar to those in the *Goodman case,* the deceased obviously having gone upon the track in front of a moving train without exercising the faculty of seeing or hearing. It is there said that the standard laid down was but another way of stating the rule of the prudent man.

Another controverted question relates to the conduct of Frank Moore and his father after the engine had choked on the track. The defendant contends that they had ample time to get out of the truck and that by the exercise of due care they could have escaped injury. This position calls for consideration of other aspects of the plaintiffs' evidence.

It is hardly open to doubt that if the engine had not stopped running the truck would have passed the crossing in safety. Why the engine stopped is left in doubt. We see no convincing evidence that it was due to the driver's negligence. It may more reasonably be attributed to the condition of the crossing. The driver had never traveled this road. It was incumbent upon the defendant by the use of proper care to maintain the crossing in a reasonably safe condition. *Stone v. R. R.,* 197 N. C., 429; *Williams v. R. R.,* 187 N. C., 348. The men in the truck were not wanting in ordinary care because they did not inspect the crossing before venturing upon it to see whether the defendant had discharged its duty. *Bullock v. R. R.,* 105 N. C., 180. What, then, was their legal duty when the engine ceased to run? The duty generally imposed upon those who are charged with negligence—that of exerting for the protection of themselves and their property such care as a prudent man would exercise under the same or similar conditions. We must keep in mind the crucial point: whether their conduct at this

time must be declared negligent as a matter of law or whether negligence is dependent upon facts to be determined by the jury. The question is vital and, in our opinion, is clearly for the jury unless we conclude that the testimony of Frank Moore bars recovery.

If he and his father closed their eyes to existing conditions, as if hoodwinked or blinded, and negligently awaited results, the recovery of damages should be denied, because in that event their negligence, concurring with that of the defendant to the last moment, would eliminate the doctrine of the defendant's last clear chance. It is upon this theory that the defendant says the answer to the third issue may be disregarded.

The distance between the train and the truck at the time the latter stopped on the track is variously estimated by the witnesses for the plaintiffs. As previously stated, Frank Moore said in effect that having stopped, looked, and listened in seven, twelve, or fifteen feet of the crossing, he went upon the track and that the train, not then in sight, must have been distant at least one-third of a mile. In reaching the track he went up an incline or "small slant." Other witnesses for the plaintiffs testified as to various estimates of the distance, ranging from almost one mile to only two hundred yards. If, as the plaintiffs claim and as their evidence tends to show, the engineer failed to give the usual warning when approaching the crossing, by which the occupants of the car were misled, and no "distress" signal was given until the train was within twenty-five or thirty yards of the stationary truck, the problem of contributory negligence would necessarily involve several unknown quantities determinable only by the jury; and as there is no exception to the charge we must presume that the law was correctly explained. If uncontradicted testimony for the plaintiffs is taken to be true the truck was on the railroad only twelve or fourteen seconds; the deceased got out at the right door, but too late to avoid injury and death; the driver said he could not escape through the door at the left. His thought instinctively turned to the task of getting his engine in motion, and his effort to achieve this result should not necessarily be imputed to him for negligence. It was not an occasion for the deliberate calculation of infinitesimals.

As stated, we are dealing with the defendant's motion for nonsuit based on the ground that the evidence for the plaintiffs conclusively establishes contributory negligence. The evidence for the defendant, if accepted, would have justified a verdict in its behalf; but in submitting the controversy to the jury upon inconsistent and contradictory testimony the trial court made no error. Consideration of the third issue is eliminated by the answer to the second.

No error.

STACY, C. J., and BROGDEN, J., dissent.