MRS. VERNON B. CASHATT, ADMINISTRATRIX OF JAMES WILLIAM CAMP-BELL, DECEASED, v. TOM BROWN AND THE NORFOLK AND WESTERN RAILWAY COMPANY.

(Filed 17 March, 1937.)

1. Railroads § 2—

A road in use from two houses to the highway prior to the construction of railroad tracks by defendant across the road, and thereafter used by the public and others desiring to go to the houses, is a crossing which the railroad is under duty to keep in a reasonably safe condition. C. S., 3449.

**2. Railroads § 9—Evidence held for jury on issue of railroad's negligent failure to keep crossing in reasonably safe condition.**

Evidence tending to show that plaintiff's intestate drove his car upon a crossing, that ballast was not kept between the rails, but that the cross-ties or spikes holding the rails were visible, so that when the car was driven over the rail the wheels dropped several inches, causing the car to stop, and that defendant's rapidly approaching train, which gave no signal or warning for the crossing, struck the car and killed plaintiff's intestate, *is held* sufficient to be submitted to the jury on the issues of negligence and proximate cause, and the question of whether defendant was guilty of contributory negligence in driving upon the crossing, and whether such contributory negligence was a proximate cause of the injury is for the jury under the evidence.

CONNOR, J., dissents.

APPEAL by plaintiff from *Hill, J.,* at September Civil Term, 1936, of DAVIDSON. Reversed.

This is an action for actionable negligence brought by plaintiff against defendants for killing her intestate on 25 September, 1935, at a railroad crossing near Price Station, known as Baughn's Crossing.

In the complaint it is alleged in part: "That at a point on said railroad and right of way of the defendant company, at a place about one-half mile in the direction of Winston-Salem, North Carolina, from Price Station on said railroad, there is a crossing which leads from a county or State maintained road across the main line track of the defendant company's sidetrack, which said crossing leads into a place where two houses are situated, and said crossing is known as Baughn's Crossing, and said road ran over the place where said crossing now exists prior to the construction of said railroad, and that by reason of the construction of said railroad, a crossing at said place was made necessary, and the public and other persons who desired to visit the place and persons who occupied said two houses, constantly and habitually used said crossing, and said usage was acquiesced in and approved by said defendant company. . . . That a short while before plaintiff's intestate was killed he went across said crossing, and while returning and going in an eastern direction, and while operating his car in a careful and prudent and very slow manner, he came up an incline to come back into the road which leads across said crossing, and at a point about 40 feet from the western rail of the main line track, he made a slight left turn to cross said tracks, and at said place the road was very rough, and plaintiff's intestate was driving very slowly, and immediately to the right of plaintiff's intestate was a bank about 6 feet in height, undergrowth, bushes, and numerous small pines, which obstructed his view of the crossing; that when plaintiff's intestate straightened out in said road to cross said crossing, and while traveling in an eastern direction at a point about 30 feet from said western rail of said main line track, there is a bank extending up about

6 feet in height from said road, and undergrowth, trees, and bushes with leaves and foliage on them, all of which obstructed the view on plaintiff's intestate's right, and to the left of plaintiff's intestate, at said time and place, there were bushes, undergrowth, and trees, all of which said bushes, undergrowth, trees, and bank as aforesaid were on the right of way of the defendant company; that at said point, behind said bank, trees, and undergrowth, plaintiff's intestate could not see down the track in the direction of Winston-Salem, North Carolina, but that plaintiff's intestate listened and heard no approach of said train or the ringing of bell or the blowing of said whistle of said locomotive or engine; that plaintiff's intestate continued to travel in an eastern direction, and after looking in both directions and listening at a place where plaintiff's intestate could see up and down the tracks of the defendant, the plaintiff's intestate drove his said car very slowly across the sidetrack and after crossing the said track immediately drove his car onto the main track, and as his car crossed the western rail of the main track, the said car dropped down between said rails of the main track and stopped, and without any warning or signals, a locomotive or engine of the defendant company and operated by the defendant's engineer negligently struck said car, demolishing the same and killing plaintiff's intestate; that it was about 5 feet from the front of plaintiff's intestate's car to the place where he was sitting, and that as plaintiff is advised, informed, and believes, the locomotive or engine overhangs the rail about 2½ or 3 feet, and by reason thereof the distance between the western rail of the defendant's main line track and the undergrowth and trees was greatly shortened; that at said crossing, between the rails of the main line track in the direction plaintiff's intestate was traveling, there is a sharp incline, and the ballast between the rails on said main line track was several inches below the top of the rails, and by reason thereof, when plaintiff's intestate slowly drove the front wheels of his said car over the western rail of said main line track, his said car dropped down between the rails, and, without any fault on his part, stalled; that the ballast on said crossing between the rails of said main line track was just barely above the top of the crossties and plaintiff's intestate's front wheels dropped several inches when they crossed said western rail; that at said crossing there is a very sharp curve on said railroad and right of way, and said crossing is practically at the apex of said curve, and that at said crossing and curve the tracks of the defendant company are very materially sloped, and that in traveling in the direction in which the plaintiff's intestate was traveling, at the time he was killed, there is a sharp incline both on said crossing and between said rails; that, as plaintiff is advised, informed, and believes, the right of way of the defendant company has been burned off since 25 September, 1935, and the bushes, undergrowth, and pine trees have been cut down; that at said crossing

---

CASHATT *v.* BROWN.

---

there is a cut and on the eastern side of said main line track the said cut is about 2 to 4 feet in height, and on the western side of said crossing the said cut is from 8 to 12 feet in height; that at said time and place the said crossing was rough and needed filling in between the rails of the main line track and said crossing is between a double curve in said track, and, as aforesaid, is located about the apex of said curve; that the engine or locomotive of the defendant company, and operated by the defendant Tom Brown, struck the car in which the plaintiff's intestate was riding, knocked the same about 60 feet, throwing plaintiff's intestate out of said car with his head against the crossties about 60 feet away from said crossing in the direction in which the train was traveling, and throwing said car upon and over him; that, as the plaintiff is advised, informed, and believes, the defendants failed to bring their said train to a quick stop, and that said train, owned and operated by the defendants, left the scene of said collision with plaintiff's intestate still under said car; that at the time of said collision the train, owned and operated by the defendants, was operated at a speed of approximately 60 miles per hour around said curve, and across said crossing at a high and dangerous rate of speed and in complete disregard of the rights of plaintiff's intestate, and without the blowing of any whistle, the ringing of any bell, and without keeping a proper lookout, and without having said train under control, and said train was so operated over and upon said crossing, which was defective and not properly maintained or kept up, and which was obstructed as aforesaid, all of which said conditions were known to the engineer, Tom Brown, and to the defendant company."

Plaintiff prayed for damages, setting same forth.

The defendants denied negligence and set up the plea of contributory negligence.

At the close of plaintiff's evidence the defendants in the court below made a motion for judgment as in case of nonsuit. C. S., 567. The court below sustained the motion, plaintiff excepted, assigned error, and appealed to the Supreme Court. The necessary facts will be set forth in the opinion.

*Spruill & Olive and Don A. Walser for plaintiff.*
*Kerr Craige Ramsay for defendant Brown.*
*Whitwell W. Coxe, Burton Craige, and Phillips & Bower for defendant Norfolk and Western Railroad Company.*

CLARKSON, J. We do not think the nonsuit can be sustained.

The allegations of the complaint and the evidence were to the effect that the Baughn's Crossing was used prior to the construction of defendant's road and since its construction, "the public and other persons who desired to visit the place and persons who occupied said two houses con-

stantly and habitually used said crossing, and said usage was acquiesced in and approved by said defendant company."

In *Stone v. R. R.,* 197 N. C., 429 (431), it is said: "The duty of a railroad company with respect to the maintenance of a crossing over its track, where its track has been constructed over an established road or highway, whether public or private, is well settled. The duty is prescribed by statute, C. S., 3449, and has been recognized and enforced by this Court in numerous decisions. In *Goforth v. R. R.,* 144 N. C., 569, 57 S. E., 209, it is said: 'It is just that crossings necessitated by the construction and operation of a railroad should be kept in a safe condition by it.' As the crossing is on the railroad company's right of way, no one except the company has the right to enter upon the crossing for the purpose of repairing the same. . . . So long, however, as it permits the public to use the crossing, it must respond in damages caused by its negligence in failing to exercise due care to maintain the crossing in a reasonably safe condition." *Moore v. R. R.,* 201 N. C., 26.

The testimony of R. M. Hundley, a witness for the plaintiff, was, in part, as follows: "I have known Baughn's Crossing in Rockingham County, about a half mile from Price, for 15 or 18 years. At the times I have known it, I think the public travels it and I have been over it myself, and have seen other people crossing it. . . . Q. Now, describe the condition of the ballast between the rails of the main line track as you saw it there after the train hit the car? A. Well, there was scarcely any in there. It was beat down or washed down to the top of the crossties—you could see the rail pins, spikes, I believe they call them. The ballast was about 4 inches below the top of the rail. With reference to the ballast between the rails on the main line track, there was practically not any in there above the crossties, and you could see the top of the crossties and also the spikes. The time I am telling about was about an hour after the wreck, the same day, same afternoon. I have been back there since that time, and I was back there in about 2 or 3 weeks after that and it was in the same condition then as it was the day of the wreck."

The allegations in the complaint: "The plaintiff's intestate drove his said car very slowly across the sidetrack and after crossing the said track immediately drove his car onto the main track, and as his car crossed the western rail of the main track the said car dropped down between said rails of the main track and stopped, and without any warning or signals, a locomotive or engine of the defendant company, and operated by the defendant's engineer, negligently struck said car, demolishing the same and killing plaintiff's intestate."

The testimony of Rev. T. G. Williams, in part: "Now, as we came down there, Mr. Campbell was driving about five miles an hour through the cut, and as we approached the track, driving, I would say, five miles

CASHATT v. BROWN.

an hour, we drove up across the sidetrack onto the main line track, to the best of my knowledge, the front wheels must have been 12 inches over the west rail and the car stopped, and in the moment the car stopped I looked toward Winston-Salem, which is south, and I noticed the train approaching. I said, 'Yonder is the train.' Mr. Campbell dropped his hand on the shift gear lever and he didn't say anything. I opened the door and jumped. It was the right-hand door next to the train—the moment I hit the ground the train hit the car and knocked it 60 feet."

There was other evidence corroborating the above evidence set forth. There was also evidence that the defendant railroad's engineer gave no warning or signals for the crossing. No blow or bell ringing for the crossing was heard. The train was running about 40 miles an hour.

The case of *Stone v. R. R., supra,* is in many respects similar: This was an "action to recover damages resulting from injuries to plaintiff's automobile, caused by the negligence of defendant in failing to exercise due care (1) to maintain a public crossing which passes over its track, in a reasonably safe condition, and (2) to stop its train before it struck and injured the automobile, which, by reason of the defective condition of said crossing, plaintiff was unable to drive off or move from said track in time to avoid the injury."

There was a judgment for plaintiff and this Court, in sustaining the judgment, said: ". . . All the evidence tended to show that the crossing was defective, in that there was a hole on the right of way, just beyond the crossties, and that this hole was not discovered by plaintiff before the wheel of his automobile dropped into it, causing the running board of his automobile to rest upon the ground. Plaintiff was unable to drive his automobile off the track, or to move it therefrom before it was struck and injured by defendant's train, which appeared after plaintiff had driven upon the crossing."

We think the evidence is sufficient to be submitted to the jury to determine whether the plaintiff's intestate was guilty of contributory negligence, and, if so, whether his negligence was the proximate cause of the injury.

In *Elder v. R. R.,* 194 N. C., 617 (619), speaking to the subject of contributory negligence, we find: "Contributory negligence, such as will defeat a recovery in a case like the one at bar, is the negligent act of the plaintiff, which, concurring and coöperating with the negligent act of the defendant, thereby becomes the real, efficient, and proximate cause of the injury, or the cause without which the injury would not have occurred. *Moore v. Iron Works,* 183 N. C., 438."

For the reasons given, the judgment of the court below is

Reversed.

CONNOR, J., dissents.