CHARLES W. BUNDY, ADMINISTRATOR OF THE ESTATE OF JOEL JEHU SECREST, v. L. R. POWELL, JR., AND HENRY W. ANDERSON, RECEIVERS OF SEABOARD AIR LINE RAILWAY COMPANY; D. S. CRADDOCK AND W. T. BALLENTINE.

(Filed 7 January, 1949.)

**1. Negligence § 11—**

Contributory negligence is an affirmative defense which defendant must plead and prove. G.S. 1-139.

**2. Negligence § 19c—**

Nonsuit on the ground of contributory negligence is proper when plaintiff's own evidence establishes this defense, G.S. 1-183, but it may not be entered when it is necessary to rely in whole or in part upon defendant's evidence, or when diverse inferences upon the question are reasonably deducible from plaintiff's evidence.

**3. Trial § 22b—**

Upon motion to nonsuit, plaintiff's evidence is to be taken as true and considered in the light most favorable to him, and while defendant's evidence which is favorable to plaintiff or which tends to clarify or explain plaintiff's evidence may be considered, defendant's evidence which is inconsistent with that of plaintiff or which tends to contradict or impeach plaintiff's evidence must be ignored.

**4. Railroads § 4: Negligence § 19c—Nonsuit on ground of contributory negligence is error when this defense is not established as sole reasonable deduction from plaintiff's evidence.**

Plaintiff's evidence was to the effect that intestate had an unobstructed view along the track upon which the train approached for only 600 feet, that intestate looked and listened immediately before traveling onto the crossing, that the crossing was in bad repair and the car stalled on the track, and was hit by the speeding train seven seconds after its approach

could have been reasonably apprehended. *Held:* Defendant railroad company's motion to nonsuit on the ground of contributory negligence should have been denied notwithstanding defendants' testimony that plaintiff drove upon the track in the path of the oncoming train and defendants' photographic evidence showing an entirely different situation at the crossing, since the court cannot pass upon the credibility or weight of the evidence in considering the propriety of nonsuit.

APPEAL by plaintiff from *Coggin, Special Judge,* at the August Term, 1948, of UNION.

The plaintiff's intestate, Joel Jehu Secrest, was killed instantaneously on the morning of 19 February, 1945, when his automobile was demolished by an eastbound freight train of the Seaboard Air Line Railway Company at a grade crossing two miles west of Monroe in Union County. D. S. Craddock was the engineer in charge of the train, and the crossing was located in the section assigned to W. T. Ballentine, section foreman, for maintenance. The plaintiff sued the defendants, L. R. Powell, Jr., and Henry W. Anderson, Receivers of the Seaboard Air Line Railway Company, D. S. Craddock, and W. T. Ballentine, under G.S. 28-173, for damages for the death of his intestate upon a complaint alleging that such death was proximately caused by the negligence of the defendants. They denied that they had been guilty of any actionable negligence, and pleaded contributory negligence on the part of the intestate as an affirmative defense.

There was substantial disagreement in the evidence of the parties relating to the merits of the action. A few facts, however, were not in dispute. The railroad track ran east and west parallel to Highway No. 74 located at least 125 yards to the north. The grade crossing marked the place where the railroad was bisected at right angles by a dirt road affording the only means of communication between Highway No. 74 on the north and a farming community, in which W. H. Smith resided, on the south. Although this neighborhood road was a private way in a legal sense, the crossing had been habitually used by the public and maintained by the Seaboard Air Line Railway Company for many years. Indeed, the defendants admitted in their answer that it was their duty at the time in controversy to exercise due care to keep the crossing in a reasonably safe condition. The right of way of the railroad company covered "100 feet on each side of the center of the track."

The plaintiff offered testimony tending to establish the matters set out in this paragraph. At the time of the fatal accident, the crossing was "very rough." The ballast "seemed to be knocked out between the rails. On the outside of the rails it was very rough too. The rails stuck up above the level of the surrounding dirt or rocks 4 to 8 inches." As a motorist proceeded south from Highway No. 74 towards the crossing, he

traveled upgrade, and could not see the track to the westward on account
of shrubbery which grew to a point within 10 or 15 feet of the track.
From this point to the land lying south of the track, the motorist's view
of an eastbound train coming from the west was limited to a space of
200 yards because the railroad beyond that distance lay within a hollow.
When the tragic collision occurred, the plaintiff's intestate and a fellow-
workmen, J. F. Griffin, were going south on the dirt road to resume
carpentering which they had begun earlier that day at the home of W. H.
Smith. They were traveling in an automobile, which was owned and
operated by the intestate, and which was "in good working condition."
Just before entering upon the crossing, they looked westwardly along the
railroad to the head of the hollow, and noted that no eastbound train was
approaching within range of sight or hearing.

Subsequent events were described by Griffin, who testified for plaintiff,
in substantially this wise: "As we approached the crossing, Secrest was
driving 10 or 15 miles per hour. The car stalled as he straddled the track.
The motor stopped. The front wheels had crossed the south rail. The
rear wheels had not crossed the north rail. As soon as I realized the car
had stopped, I looked at the track and saw the train coming from the
west, and I touched Secrest on the arm and told him to jump out, and by
the time I opened the door and ran the train had done struck the car.
I judge the train was around 200 yards away at the time it entered up
there where I could see it. It had just entered the top of the hollow
there. I got out without injury. At the time the train hit the auto-
mobile I hadn't got stopped from running. I could not tell that the train
slackened its speed from the time I saw it until it hit the car. In my
opinion, the train was running 65 to 70 miles an hour. I was on the
right hand side of the car next to the driver. In getting out, I didn't have
to go around anything to get clear of the train. Secrest would have had to
get out from under the steering wheel. He had more opposition than
I did. I didn't hear the train give any signal by whistle or bell as we
approached the crossing and before I saw the train. I didn't hear it give
any signal before the collision. I saw the train when it came to a stop.
The front of the train ran about half a mile from the crossing. It was
a pretty long freight train. I went down to Secrest before he was moved.
He was dead. He was about 60 yards east of the crossing on the north
side."

The defendants offered oral testimony of witnesses and photographs
allegedly taken at the scene by their witness, W. M. White, shortly after
the collision and received in evidence without objection tending to show
that the conditions described in this paragraph prevailed at the time
named in the pleadings. The ballast on the crossing formed a solid road-
bed virtually even with the tops of the rails. The right of way was free

of shrubbery and other obstructions. The railroad track ran westward from the crossing in a straight line without material elevations or depressions for approximately three miles. As a southbound motorist on the dirt road neared the crossing, he had the benefit of an unobstructed view of the track westwardly for distances varying from 1,200 feet at a point 25 feet north of the crossing to upwards of three miles at the first rail.

Witnesses for the defendants testified, in substance, that the freight train drew near to the crossing at a speed not exceeding 35 miles an hour after signaling its approach by sounding its whistle, and that the plaintiff's intestate precipitately drove his automobile onto the crossing 200 feet ahead of the oncoming train, thereby rendering the lethal crash inevitable. In addition, the defendants offered testimony indicating that on the day of the accident some of the witnesses for the plaintiff made statements inconsistent with their testimony at the trial and calculated to cast doubt on their credibility.

The court entered a compulsory judgment of nonsuit pursuant to the motion of the defendants made when the plaintiff rested, and renewed at the close of all the evidence, and the plaintiff appealed, assigning such ruling as error.

*E. O. Ayscue and Robinson & Jones for plaintiff, appellant.*

*Milliken & Richardson and Cansler & Cansler for defendants, appellees.*

ERVIN, J. Counsel for the defendants conceded with commendable candor on the argument and in their brief that the plaintiff adduced enough evidence on the trial to make the question of actionable negligence on the part of the defendants one for the determination of a jury. For this reason, we pass over this phase of the case, and proceed at once to inquire whether the judgment of nonsuit can be sustained on the ground that the plaintiff's intestate was contributorily negligent as a matter of law. The parties join battle on this issue. The plaintiff asks a reversal upon the authority of *Cashatt v. Brown,* 211 N. C. 367, 190 S. E. 480, and *Moore v. R. R.,* 201 N. C. 26, 158 S. E. 556. The defendants pray for an affirmance on the basis of these decisions: *Penland v. R. R.,* 228 N. C. 528, 46 S. E. (2) 303; *Wilson v. R. R.,* 223 N. C. 407, 26 S. E. (2) 900; *Bailey v. R. R.,* 223 N. C. 244, 25 S. E. (2) 833; *Jeffries v. Powell,* 221 N. C. 415, 20 S. E. (2) 561; *McCrimmon v. Powell,* 221 N. C. 216, 19 S. E. (2) 880; *Godwin v. R. R.,* 220 N. C. 281, 17 S. E. (2) 137; *Temple v. Hawkins,* 220 N. C. 26, 16 S. E. (2) 400.

Contributory negligence is an affirmative defense which the defendant must plead and prove. G.S. 1-139. Nevertheless, the rule is firmly embedded in our adjective law that a defendant may take advantage of his plea of contributory negligence by a motion for a compulsory judg-

ment of nonsuit under G.S. 1-183 when the facts necessary to show the contributory negligence are established by the plaintiff's own evidence. *Daughtry v. Cline,* 224 N. C. 381, 30 S. E. (2) 322, 154 A. L. R. 789; *Montgomery v. Blades,* 222 N. C. 463, 23 S. E. (2) 844; *Smith v. Sink,* 211 N. C. 725, 192 S. E. 725; *Hayes v. Telegraph Co.,* 211 N. C. 192, 189 S. E. 499; *Ramsey v. Furniture Co.,* 209 N. C. 165, 183 S. E. 536; *Mason v. R. R.,* 208 N. C. 842, 181 S. E. 625; *Lincoln v. R. R.,* 207 N. C. 787, 178 S. E. 601; *Jones v. Bagwell,* 207 N. C. 378, 177 S. E. 170; *Davis v. Jeffreys,* 197 N. C. 712, 150 S. E. 488; *Elder v. R. R.,* 194 N. C. 617, 140 S. E. 298.

In ruling upon a motion for an involuntary judgment of nonsuit under the statute after all the evidence on both sides is in, the court may consider so much of the defendant's testimony as is favorable to the plaintiff or tends to clarify or explain evidence offered by the plaintiff not inconsistent therewith; but it must ignore that which tends to establish another and different state of facts or which tends to contradict or impeach the testimony presented by the plaintiff. *Humphries v. Coach Co.,* 228 N. C. 399, 45 S. E. (2) 546; *Buckner v. Wheeldon,* 225 N. C. 62, 33 S. E. (2) 480; *Atkins v. Transportation Co.,* 224 N. C. 688, 32 S. E. (2) 209; *Lindsey v. Speight,* 224 N. C. 453, 31 S. E. (2) 371; *Gregory v. Insurance Co.,* 223 N. C. 124, 25 S. E. (2) 398, 147 A. L. R. 283; *Godwin v. R. R., supra; Funeral Home v. Insurance Co.,* 216 N. C. 562, 5 S. E. (2) 820. But the court cannot allow a motion for judgment of nonsuit on the ground of contributory negligence on the part of the plaintiff in actions for personal injury or of the decedent in actions for wrongful death if it is necessary to rely either in whole or in part on testimony offered by the defense to sustain the plea of contributory negligence. *Beck v. Hooks,* 218 N. C. 105, 10 S. E. (2) 608; *Lunsford v. Manufacturing Co.,* 196 N. C. 510, 146 S. E. 129; *Nowell v. Basnight,* 185 N. C. 142, 116 S. E. 87; *Battle v. Cleave,* 179 N. C. 112, 101 S. E. 555.

A judgment of involuntary nonsuit cannot be rendered on the theory that the plea of contributory negligence has been established by the plaintiff's evidence unless the testimony tending to prove contributory negligence is so clear that no other conclusion can be reasonably drawn therefrom. *Daughtry v. Cline, supra; Atkins v. Transportation Co., supra; Crone v. Fisher,* 223 N. C. 635, 27 S. E. (2) 642; *Hampton v. Hawkins,* 219 N. C. 205, 13 S. E. (2) 227; *Cole v. Koonce,* 214 N. C. 188, 198 S. E. 637; *Manheim v. Taxi Corp.,* 214 N. C. 689, 200 S. E. 382; *Morris v. Johnson,* 214 N. C. 402, 199 S. E. 190. If the controlling or pertinent facts are in dispute, or more than one inference may reasonably be drawn from the evidence, the question of contributory negligence must be submitted to the jury. *Pearson v. Stores Corp.,* 219 N. C. 717, 14 S. E. (2) 811; *Templeton v. Kelley,* 215 N. C. 577, 2 S. E. (2) 696; *Ferguson v.*

*Asheville,* 213 N. C. 569, 197 S. E. 146. In ruling on a motion for nonsuit, the court does not pass on the credibility of the witnesses or the weight of the testimony. *Pappas v. Crist,* 223 N. C. 265, 25 S. E. (2) 850; *Wall v. Bain,* 222 N. C. 375, 23 S. E. (2) 330; *Alexander v. Utilities Co.,* 207 N. C. 438, 177 S. E. 427. It takes it for granted that the evidence favorable to the plaintiff is true, and resolves all conflict of testimony in his favor. *Diamond v. Service Stores,* 211 N. C. 632, 191 S. E. 358; *Cole v. R. R.,* 211 N. C. 591, 191 S. E. 353; *Brinkley v. R. R.,* 126 N. C. 88, 35 S. E. 238.

When the evidence adduced at the trial is tested by these principles, it becomes manifest that the question of whether the plaintiff's intestate was guilty of contributory negligence was for the jury, and that the court erred in allowing the motion of the defendants for a compulsory nonsuit.

The case is distinguishable from those cited by defendants in that the plaintiff's testimony does not impel the single conclusion that his intestate drove his automobile onto the crossing in the face of an oncoming train which he saw, or, in the exercise of reasonable care, should have seen. Here, opposing inferences are permissible. When interpreted most favorably for him, the plaintiff's evidence justifies the deductions that the intestate looked and listened immediately before driving onto the crossing and thereby ascertained that no train was within range of his view, which extended to the westward 600 feet. Clearly, it is not logical to conclude as a matter of law that the intestate was negligent in attempting to cross the railroad track under these circumstances. Besides, the plaintiff's testimony warrants the inference that the intestate's automobile stalled on the crossing in consequence of a breach of the railroad company's admitted duty to exercise due care to keep the crossing in a reasonably safe condition. *Cashatt v. Brown, supra; Moore v. R. R., supra; Stone v. R. R.,* 197 N. C. 429, 149 S. E. 399; *Goforth v. R. R.,* 144 N. C. 569, 57 S. E. 209; G.S. 60-43. It is not a necessary inference of law that the plaintiff's intestate failed to exercise reasonable care for his own protection under the existing circumstances, merely because he did not extricate himself from his perilous position before the fatal crash. According to plaintiff's evidence, the intestate had not exceeding seven seconds in which to escape after being apprised of the approach of the fast moving train.

The defendants invoke the statement of *Chief Justice Stacy* in *Powers v. Sternberg,* 213 N. C. 41, 195 S. E. 88, that "there are a few physical facts which speak louder than some of the witnesses" and the declaration of *Mr. Justice Barnhill* in *Caldwell v. R. R.,* 218 N. C. 63, 10 S. E. (2) 680, that "when a witness makes a statement of fact which is obviously impossible it does not rise to the dignity of evidence." They argue that the judgment of nonsuit was proper because the photographs allegedly made by their witness, W. M. White, shortly after the fatal accident truly

show the physical conditions at and near the crossing at the time in controversy, and render it obvious that the collision could not possibly have happened in the manner depicted by the plaintiff's witnesses. The defendants might well address this argument to a jury with satisfying result. But the court cannot utilize it without passing on the credibility of the photographer and the other witnesses, and determining the comparative probate force of the photographs and the other testimony. 32 C. J. S., Evidence, section 771. This the court is not permitted to do when considering the propriety of a nonsuit.

For the reasons given, the nonsuit is set aside, and

Reversed.